[No. 51129–2. En Banc. October 3, 1985.]

EDWARD F. BRITTON, *Respondent,* v. SAFECO INSURANCE COMPANY OF AMERICA, *Appellant.*

*Randall & Danskin, P.S.,* by *Michael J. Myers,* for appellant.

*Golden & Knowlton,* by *John O. Knowlton,* for respondent.

*James S. Berg* and *Donald E. Templeton* on behalf of Washington Association of Defense Counsel, amici curiae for appellant.

*Bryan P. Harnetiaux* and *Michael J. Pontarolo* on behalf of Washington Trial Lawyers Association, amici curiae for respondent.

ANDERSEN, J.—

## FACTS OF CASE

The appellant insurance company (insurer) issued an automobile policy to Columbia County; respondent was the sheriff of that County. Respondent, acting within the scope of his duties, was injured when the County automobile he was driving was struck by another automobile on November 24, 1980, a critical date in our analysis. Since respondent was within the coverage of the policy, he will be referred to as the "insured".

Claiming disability from his injuries, the insured retired in December of 1982 thereby being eligible for and receiving benefits under RCW 41.26, the Washington Law Enforcement Officers' and Fire Fighters' Retirement System Act (LEOFF).

The insured then brought a declaratory judgment action against the insurer seeking to establish a right to compensation for his injuries under the uninsured/underinsured motorist endorsement on the Columbia County policy. That endorsement provided that the amount payable thereunder would be reduced by:

All sums paid or payable under any workers' compensation, disability benefits or similar law, . . .

Both sides moved for summary judgment. The insured's motion was granted on the basis that (1) the setoff clause was against public policy; and (2) LEOFF benefits were a collateral source not to be utilized for offset.

We remand for the determination of additional facts which will be dispositive under our analysis.

One ultimate issue is presented.

## ISSUE

Is it permissible for an uninsured/underinsured motorist endorsement to provide a setoff of LEOFF disability benefits from compensation that the insured would otherwise be entitled to receive under his uninsured/underinsured motorist endorsement?

## Decision

CONCLUSION. The answer to the question posed by this issue depends upon certain critical dates described hereafter. The record before us is unclear thereon, indeed silent, so the cause is remanded to the trier of fact with the following instructions:

First, to determine as a fact if the motorist who ran into the insured's automobile was *uninsured*. If he was, then the disability benefits setoff clause in the endorsement is not valid. Under both the pre–1980 uninsured motorist statute, and its 1980 successor (which also applies to uninsured motorists), such a reduction in the statutorily mandated uninsured motorist coverage is against the policy of these statutes and is not permissible; therefore, the disability benefits setoff clause is void.

Second, and if the motorist who ran into the insured's automobile had some liability insurance at the time but was *underinsured,* to determine as a fact whether the underinsured motorist endorsement was issued or renewed after the September 1, 1980 effective date of the 1980 underinsured motorist act and before the November 24, 1980 accident. (a) If it was not, then the underinsured motorist endorsement is not controlled by the statutory policy but by the language of the insurance contract, and the disability benefits setoff clause is valid and enforceable. (b) If it was, then the 1980 act is applicable and the disability benefits setoff clause in the endorsement is against the statutorily mandated policy of the underinsured motorist statute and void.

To analyze and decide the issue, we examine the uninsured/underinsured motorist coverage which has evolved through four major stages in this state.

The first stage occurred in the mid–1950's when the insurance industry responded to the problem of the financially irresponsible motorist, the stolen car and hit and run accident, by voluntarily offering *uninsured* motorist coverage to the public. In construing such coverage this court has applied principles of insurance contract law against the backdrop of public policy.[1]

---

[1]*See, e.g., Tsapralis v. Public Employees Mut. Cas. Co.,* 77 Wn.2d 581, 464

The second stage was the enactment of *uninsured* motorist statutes, here and elsewhere, requiring automobile liability insurers to offer uninsured motorist coverage as a supplement to every automobile liability policy. All states now have an uninsured motorist statute of some type. Our uninsured motorist statute was enacted in 1967. This statute, contained in a single paragraph, was the precursor of our present statute on the subject.[2]

Since 1967, we have developed a body of law about this *uninsured* motorist statute. Shortly before the 1980 Legislature changed the statute, this court summarized the case law:

> We have previously held [the uninsured motorist statute] is to be liberally construed in order to provide broad protection against financially irresponsible motorists. *Touchette v. Northwestern Mut. Ins. Co.*, 80 Wn.2d 327, 494 P.2d 479 (1972). The purpose of the statute is to allow an injured party to recover those damages which would have been received had the responsible party maintained liability insurance. *Touchette v. Northwestern Mut. Ins. Co., supra.*
>
> The insurance carrier which issued the policy stands, therefore, in the shoes of the uninsured motorist to the extent of the carrier's policy limits.

P.2d 421 (1970); *Safeco Ins. Co. of Am. v. McManemy*, 72 Wn.2d 211, 432 P.2d 537 (1967); *Miller v. Allstate Ins. Co.*, 66 Wn.2d 871, 405 P.2d 712 (1965).

[2]"On and after January 1, 1968, no new policy or renewal of an existing policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in RCW 46.29.490, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit–and–run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom, except that the named insured may be given the right to reject such coverage, and except that, unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer." Laws of 1967, ch. 150, § 27, p. 737 (former RCW 48.22.030).

*State Farm Mut. Auto. Ins. Co. v. Bafus,* 77 Wn.2d 720, 724, 466 P.2d 159 (1970).

The statute was designed to protect innocent victims of uninsured negligent motorists, not to protect vehicles. *Cammel v. State Farm Mut. Auto. Ins. Co.,* 86 Wn.2d 264, 543 P.2d 634 (1975). Where an insurance policy does not provide the protection mandated by [the uninsured motorist statute], the offending portion of the policy is void and unenforceable. *Touchette v. Northwestern Mut. Ins. Co., supra; Federated Am. Ins. Co. v. Raynes,* 88 Wn.2d 439, 563 P.2d 815 (1977); *Grange Ins. Ass'n v. Great Am. Ins. Co.,* 89 Wn.2d 710, 575 P.2d 235 (1978).

The statute does not contemplate a piecemeal whittling away of liability for injuries caused by uninsured motorists. *First Nat'l Ins. Co. of America v. Devine,* 211 So. 2d 587, 589 (Fla. Dist. Ct. App. 1968); *Touchette v. Northwestern Mut. Ins. Co., supra.*

*Finney v. Farmers Ins. Co.,* 92 Wn.2d 748, 751–52, 600 P.2d 1272 (1979).

The third stage was when insurers voluntarily began offering *underinsured* motorist coverage to protect motorists not only against uninsured motorists but also against underinsured motorists. The ultimate meaning of "underinsured" is not before us.

The fourth and present stage of development was the enactment of legislation requiring insurers to offer *underinsured* motorist coverage as well as uninsured motorist coverage. Our statute is from an amendment to the original uninsured motorist statute; it lumped both uninsured and underinsured coverage requirements together. Our 1980 *uninsured/underinsured* motorist statute, as it existed at the time of the insured's accident, read as follows:

(1) "Underinsured motor vehicle" means a motor vehicle with respect to the ownership, maintenance, or use of which either no bodily injury liability bond or insurance policy applies at the time of an accident, or with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable to a covered person after an accident is less than the damages which the covered person is legally entitled to recover.

(2) No new policy or renewal of an existing policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be issued with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles and hit–and–run motor vehicles because of bodily injury or death, resulting therefrom, except while operating or occupying a motorcycle or motor–driven cycle, and except while operating or occupying a motor vehicle owned or available for the regular use by the named insured or any family member, and which is not insured under the liability coverage of the policy.

(3) Coverage required under subsection (2) of this section shall be in the same amount as the insured's third party liability coverage unless the insured rejects all or part of the coverage as provided in subsection (4) of this section.

(4) The insured may reject underinsured coverage and the requirements of subsections (2) and (3) of this section shall not apply. If the insured has rejected underinsured coverage, such coverage shall not be included in any supplemental or renewal policy unless the insured subsequently requests such coverage in writing.

(5) The limit of liability under the policy coverage may be defined as the maximum limits of liability for all damages resulting from any one accident regardless of the number of covered persons, claims made, or vehicles or premiums shown on the policy, or premiums paid, or vehicles involved in an accident.

(6) The policy may provide that if an injured person has other similar insurance available to him under other policies, the total limits of liability of all coverages shall not exceed the higher of the applicable limits of the respective coverages.

Laws of 1980, ch. 117, § 1, p. 361 (RCW 48.22.030).

Under this 1980 enactment, *both* uninsured and underinsured motorist coverages are together termed "underinsured" motorist coverage and come within the same statute,

RCW 48.22.030. For the purposes of this opinion, however, the distinction between uninsured motorist coverage and underinsured motorist coverage will be maintained in the interest of clarity.

It should also be added that this 1980 statute was subsequently amended to cover property damage, accidents caused by "phantom vehicles" and in other particulars, none of which are relevant to the issues herein other than that the fact of these later changes bears note.[3]

The accident in the present case occurred as development stage three was ending and stage four was beginning.

Turning to the insurance policy endorsement, the LEOFF disability benefits payable to the insured are clearly "sums paid or payable under . . . disability benefits or similar law" within the plain meaning of the disability benefits setoff clause set out at the outset of this opinion.[4] This particular clause is basically that which was initially provided in the 1966 Standard Form uninsured motorist endorsement issued May 1, 1966, by the National Bureau of Casualty Underwriters. It is referred to as both a "setoff" or "reduction of liability" clause and is not to be confused with the customary "exclusion" clause designed to eliminate workers' compensation and disability benefit subrogation claims.[5]

The courts have dealt with this clause primarily from the standpoint of workers' compensation–uninsured motorist cases.[6] The majority of jurisdictions have on one basis or another held this clause to be unenforceable in uninsured

---

[3]Laws of 1981, ch. 150, p. 717; Laws of 1983, ch. 182, p. 996; Laws of 1985, ch. 328, p. 1124.

[4]RCW 41.26.120–.130.

[5]1 A. Widiss, *Uninsured and Underinsured Motorist Insurance* § 14.3, at 446 (2d ed. 1985).

[6]Annot., *Uninsured Motorist Coverage: Validity and Effect of Policy Provision Purporting To Reduce Coverage by Amount Paid Under Workmen's Compensation Law*, 24 A.L.R.3d 1369 (1969).

motorist cases.[7] Research has failed to disclose any uninsured[8] or underinsured motorist cases dealing with the clause in the context of a disability benefit law such as LEOFF.

The insured, to avoid setoff of LEOFF benefits, argues that the setoff clause is void as against public policy.

The insurer argues that the clause is clear and unambiguous; therefore, it is entitled to set off or reduce the amount under the uninsured or underinsured motorist coverage by all sums paid or payable by way of LEOFF disability benefits.

The parties and the trial court have implicitly assumed that the 1980 uninsured/underinsured motorist statute necessarily applies to this case. That may or may not be so.

### IF THE OTHER MOTORIST IS UNINSURED

Our analysis starts with the premise that an insurance regulatory statute becomes a part of the policy of insurance.[9] In their pleadings and briefs, the parties variously refer to the motorist who drove into the insured's automobile as "uninsured" and "underinsured". The record does not reflect whether that motorist had any liability insurance or not. If he did not, and the insured's claim herein is being pressed under the *uninsured* motorist coverage, then the disability benefits setoff clause in the policy is void. This is because both the original 1967 uninsured motorist statute,[10] and its 1980 successor,[11] mandate the same public policy, namely, that no reduction in uninsured motorist benefits below the statutory limits is permissible

---

[7]1 A. Widiss § 14.3, at 446; 8D J. Appleman, *Insurance* § 5128.35, at 164 (1981).

[8]*See* 1 A. Widiss § 14.4.

[9]*Touchette v. Northwestern Mut. Ins. Co.*, 80 Wn.2d 327, 332, 494 P.2d 479 (1972).

[10]Laws of 1967, ch. 150, § 27, p. 737 (former RCW 48.22.030).

[11]Laws of 1980, ch. 117, § 1, p. 361 (RCW 48.22.030).

unless the statute so authorizes. Since *neither* the old nor the new statute authorizes a disability benefit setoff, the clause so providing is void.

### IF THE OTHER MOTORIST IS UNDERINSURED

Next we turn to the alternative possibility on this record, namely, that the offending motorist is *underinsured* rather than uninsured. As observed above, this state's first statute regulating underinsured motorist coverage was the 1980 statute which became effective September 1, 1980, about 2 months before the insured's accident. As to that, statutes requiring that insurance policies be issued with uninsured or underinsured motorist coverage ordinarily embrace only policies thereafter issued and not existing policies.[12] There was no statute regulating underinsured motorist coverage prior to enactment of the 1980 statute,[13] and the previous uninsured motorist statute did not encompass underinsured motorists.[14] The insured was injured on November 24, 1980. This was after the September 1, 1980 effective date of the underinsured motorist statute.[15] That statute (set forth above) required only that "[n]o new policy or renewal of an existing policy" of motor vehicle insurance will be "issued" unless underinsured motorist coverage is provided[16] (or else is waived by the insured).[17] Since the enactment clearly applies to the issuance of both "new" policies and "renewal" of existing policies, it precludes our giving it

---

[12]*See* 12A G. Couch, *Insurance* § 45:623 (2d rev. ed. 1981); 8C J. Appleman, *Insurance* § 5067.15, at 19 (1981); *O'Banion v. Allstate Ins. Co.,* 347 So. 2d 878 (La. Ct. App. 1977); *MFA Ins. Co. v. Hankins,* 610 P.2d 785 (Okla. 1980).

[13]*See* Laws of 1980, ch. 117, § 1, p. 361; *Strunk v. State Farm Mut. Auto. Ins. Co.,* 90 Wn.2d 210, 212–14, 580 P.2d 622 (1978).

[14]*Strunk,* at 212–13; *Finney v. Farmers Ins. Co.,* 92 Wn.2d 748, 752, 600 P.2d 1272 (1979).

[15]Laws of 1980, ch. 117, § 8, p. 366.

[16]RCW 48.22.030(2).

[17]RCW 48.22.030(4).

retroactive effect.

It follows from the foregoing that the 1980 underinsured motorist statute will be read into the *underinsured* motorist coverage in this case *if* the endorsement or policy in which it is contained was issued or renewed *after* the September 1, 1980 effective date of the statute *and before* the November 24, 1980 accident in which the insured was injured. As pointed out, the appellate record is silent as to this; and since under our analysis this fact may affect the outcome of the case, it will have to be determined by the trier of fact on remand.

> (A) If the underinsured motorist endorsement was "not" issued or renewed between September 1, 1980 and the November 24, 1980 accident.

If on remand it is determined that the offending motorist was underinsured (as distinguished from uninsured), and that the underinsured motorist endorsement was not issued or renewed between September 1, 1980 and the November 24, 1980 accident, then the underinsured motorist statute is *not* applicable and, for the reasons which follow, the disability benefits setoff clause in the policy *is* valid and enforceable.

Although contracts of insurance are to be construed in favor of the insured and most strongly against the insurer, we cannot modify clear and unambiguous language in an insurance policy or revise the insurance contract under the theory of construing it.[18] The disability benefits setoff clause here is clear and unambiguous.[19]

As a private contractor, an insurer is permitted to limit its liability unless to do so would be inconsistent with public policy; and when inconsistent public policy exists in

---

[18] *West Am. Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 80 Wn.2d 38, 44, 491 P.2d 641 (1971); *Touchette,* at 336 (Neill, J., concurring); *Milliron v. United Benefit Life Ins. Co.,* 18 Wn. App. 68, 71–72, 566 P.2d 582 (1977).

[19] *See State Farm Gen. Ins. Co. v. Emerson,* 102 Wn.2d 477, 484–85, 687 P.2d 1139 (1984).

such cases, it will ordinarily be found in a regulatory statute.[20] Absent applicability of the *underinsured* motorist statute, there is no statutory or other public policy to be read into the underinsured motorist endorsement which would void the disability benefits setoff clause.[21] In that event, the clause, having as its purpose the prevention of double coverage and overlapping disability benefits, would be valid.[22]

■ The insured's further argument that the disability benefits setoff clause is invalid under the collateral source rule is not well taken. The policy of that rule is "that the wrongdoer should not benefit from collateral payments made to the person he has wronged."[23] Although in uninsured motorist cases it is often said that the insurer stands in the shoes of the uninsured motorist, the insurer has, in fact, done nothing morally or legally culpable, hence is not a "wrongdoer" within this equation; furthermore, the tortfeasor who caused the insured's injury in this case would in no way benefit from the setoff. Notwithstanding its tort–oriented appearance, uninsured and underinsured motorist coverages are most appropriately characterized as 2–party contractual relationships between the insurer and the insured.[24] We perceive no rational basis for applying the

---

[20]*Mutual of Enumclaw Ins. Co. v. Wiscomb*, 97 Wn.2d 203, 210, 643 P.2d 441 (1982), *aff'g on rehearing* 95 Wn.2d 373, 622 P.2d 1234 (1980); *Trinity Universal Ins. Co. v. Willrich*, 13 Wn.2d 263, 272, 124 P.2d 950, 142 A.L.R. 1 (1942); 8C J. Appleman, *Insurance* § 5067.15, at 16–17 (1981).

[21]*Votedian v. General Accident Fire & Life Assur. Corp.*, 330 Pa. Super. 13, 478 A.2d 1324 (1984). *Accord, Rodenbough v. Grange Ins. Ass'n*, 33 Wn. App. 137, 139, 652 P.2d 22 (1982). *See also Willrich*, at 273.

[22]*Milliron*, at 72–74.

[23]*Ciminski v. SCI Corp.*, 90 Wn.2d 802, 805, 585 P.2d 1182 (1978); *see Heath v. Seattle Taxicab Co.*, 73 Wash. 177, 186, 131 P. 843 (1913).

[24]3 M. Minzer, J. Nates, C. Kimball, D. Axelrod & R. Goldstein, *Damages in Tort Actions* § 17.24[3], at 17–94 (1984); *Booth v. Fireman's Fund Ins. Co.*, 253 La. 521, 218 So. 2d 580, 28 A.L.R.3d 573 (1968); *Reese v. State Farm Mut. Auto. Ins. Co.*, 285 Md. 548, 403 A.2d 1229 (1979); *Detroit Auto. Inter–Ins. Exch. v.*

collateral source rule to this insurance contract where the parties by their contract have agreed to set off disability benefits against amounts payable under underinsured motorist coverage.[25]

(B) If the underinsured motorist endorsement "was" issued or renewed between September 1, 1980 and the November 24, 1980 accident.

If, on the other hand, the trier of fact determines that the underinsured motorist endorsement was issued or renewed after the September 1, 1980 effective date of the 1980 underinsured motorist act and before the November 24, 1980 accident, then the 1980 underinsured motorist statute is applicable in this case. In that event, it is our holding that the disability benefits setoff clause in the policy is void as against public policy. Our reasoning on this aspect of the case is as follows.

In *Mutual of Enumclaw Ins. Co. v. Wiscomb*, 97 Wn.2d 203, 643 P.2d 441 (1982), *aff'g on rehearing* 95 Wn.2d 373, 622 P.2d 1234 (1980), this court reviewed the public policy reasons behind the previous *uninsured* motorist statute and concluded:

*This same public policy has been carried over into the new underinsured motorist statute, RCW 48.22.030 . . .*

(Italics ours.) *Wiscomb*, at 208. We hold that the body of law that had developed under the previous *uninsured* motorist statute (summarized in *Finney v. Farmers Ins. Co.*, 92 Wn.2d 748, 600 P.2d 1272 (1979), and quoted above) has been carried over to *underinsured* motorist situations to the extent those principles are compatible in the underinsured context and have not been changed by the terms of the new and more detailed uninsured/underinsured motor-

---

*Hafendorfer*, 38 Mich. App. 709, 197 N.W.2d 155 (1972); *Uptegraft v. Home Ins. Co.*, 662 P.2d 681 (Okla. 1983); *Turlay v. Farmers Ins. Exch.*, 259 Or. 612, 488 P.2d 406 (1971); *Franco v. Allstate Ins. Co.*, 505 S.W.2d 789, 791–92 (Tex. 1974); *Sahloff v. Western Cas. & Sur. Co.*, 45 Wis. 2d 60, 171 N.W.2d 914 (1969).

[25]3 M. Minzer, § 17.24[5], at 17–113, 17–114.

ist statute enacted in 1980, RCW 48.22.030.

■■ Accordingly, we construe the purpose of the *underinsured* motorist aspects of the new underinsured motorist statute as allowing an injured party to recover those damages which the injured party would have received had the responsible party been insured with liability limits as broad as the injured party's statutorily mandated underinsured motorist coverage limits.[26] This also means that where the underinsured motorist endorsement does not provide protection to the extent mandated by the underinsured motorist statute, the offending portion of the policy is void and unenforceable.[27] In other words, the Legislature has mandated a certain amount and kind of coverage; the insurer cannot avoid that obligation by a policy clause which has not been authorized by the Legislature. In so holding, we merely carry out a clear legislative directive enacted with presumed knowledge of our prior holdings.

If, therefore, the trial court does establish (in accordance with our above instructions) that the underinsured motorist statute (RCW 48.22.030) is applicable to the accident in this case, then since the disability benefits setoff in the underinsured motorist endorsement restricts the coverage mandated by the underinsured motorist statute, the disability benefits setoff clause is against public policy and void.[28]

Nothing in the special provisions of the 1980 underinsured motorist statute (quoted in full above) changes our conclusion in this regard. Subsections 5 and 6 thereof are aimed at the practice known as "stacking".[29] Certain kinds

---

[26]*Finney,* at 751 (and authorities cited therein); *see Strunk,* at 213.

[27]*Finney,* at 751–52.

[28]*Finney,* at 751–52; *Touchette v. Northwestern Mut. Ins. Co.,* 80 Wn.2d 327, 333, 494 P.2d 479 (1972).

[29]*See* 12A G. Couch, *Insurance* § 45:651 (2d rev. ed. 1981); Comment, *Washington's Underinsured Motorist Statute: Balancing the Interests of Insurers and Insureds,* 55 Wash. L. Rev. 819, 821–23 (1980).

of stacking had previously been upheld by this court (and other courts) in construing the earlier uninsured motorist statute. Subsection 5 of the 1980 enactment authorizes policy provisions which prohibit so–called "internal stacking" of coverage, that is the adding together of various coverages within a single policy in such a manner as to increase available coverage limits.[30] Subsection 6, in turn, authorizes policies to contain provisions prohibiting "external stacking", that is the adding together of several different policy coverages to increase available coverage limits.[31] Both of these statutory provisions, however, are limited by their terms to insurance *policies* and are therefore not applicable to cases such as this where the disability benefits are paid under the Washington Law Enforcement Officers' and Fire Fighters' Retirement System Act,[32] a state *law*. Some states have enacted statutes specifically authorizing setoffs of this nature which are aimed at preventing the possibility of duplicative recoveries by the insured,[33] but our State has not done so.

---

[30]RCW 48.22.030(5).

[31]RCW 48.22.030(6).

[32]RCW 41.26.

[33]*See Eliopulos v. North River Ins. Co.*, 219 Cal. App. 2d 845, 33 Cal. Rptr. 449 (1963); *Bergmann v. Century Ins.*, 422 So. 2d 972 (Fla. Dist. Ct. App. 1982); *cf. Smith v. Detroit Auto. Inter–Ins. Exch.*, 124 Mich. App. 514, 335 N.W.2d 72 (1983). *See generally* Alaska Stat. § 28.22.110(b)(1) (1984); Cal. Ins. Code § 11580.2(h)(1) (West Supp. 1985); Conn. Gen. Stat. Ann. § 38–175(c)(2)(b)(1) (West Supp. 1985); Fla. Stat. Ann. § 627.727(1) (West Supp. 1985); Iowa Code Ann. § 516A.2 (West Supp. 1985); Kan. Stat. Ann. § 40–284(e)(4) (Supp. 1984); Md. Ann. Code art. 48A, § 543(d) (1979); Mont. Code Ann. § 33–23–203(2) (1983); N.J. Stat. Ann. § 39:6A–6 (West Supp. 1985); N.C. Gen. Stat. § 20–279.21(e) (1983); Or. Rev. Stat. § 743.792(7)(c)(B) (1983); Tenn. Code Ann. § 56–7–1205 (1980).

Remanded for further proceedings consistent herewith. Costs and allowable attorneys' fees will abide the result.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, DORE, PEARSON, CALLOW, GOODLOE, and DURHAM, JJ., concur.