[No. 58785-0.   En Banc.   June 10, 1993.]

DEBORAH C. QUINN KYRKOS, ET AL, *Respondents*, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *Appellant*.

*Reed McClure,* by *William R. Hickman* and *Pamela A. Okano,* for appellant.

*Thomas J. Chambers* and *Lori A. Cogan,* for respondents.

BRACHTENBACH, J. — This case concerns the validity of two exclusions in a State Farm Mutual Automobile Insurance Company's automobile insurance policy which would deny "underinsured" motorist coverage, in part, to its insureds, the plaintiffs Deborah C. Quinn Kyrkos and Kyriakos C. Kyrkos. The exclusions deny, to the extent of the financial responsibility law limits, underinsured motorist (UIM) coverage if a vehicle is owned or operated by a self-insured or is owned by any government, its political subdivisions or agencies.

Underinsured motorist coverage includes by statutory definition both uninsured and underinsured motorists. The UIM statute defines an underinsured motor vehicle. If no *INSURANCE POLICY* or *LIABILITY BOND* applies to the vehicle, it is underinsured. RCW 48.22.030(1).

State Farm's policy substantially modifies the statutory definition. By two exclusions, the policy says that even if there is no liability insurance policy or bond, there is no UIM coverage, to the extent of financial responsibility limits, if the vehicle is (1) owned or operated by a self-insurer, or (2) is owned by a government, its political subdivisions or agencies.

The relevant facts are stipulated. Plaintiff wife was injured in a collision between her car and a truck owned by the City of Seattle and driven by an employee acting within the scope and course of his employment.

There is no liability policy or bond which applies to the city vehicle. Under the State Farm policy, described hereafter, there was UIM coverage with $100,000/$300,000 limits. State Farm denied coverage to the extent of financial responsibility limits, $25,000/$50,000. Plaintiffs sued to compel arbitration. After declaring the exclusions null and void, the trial court held plaintiffs are entitled to arbitrate UIM benefits. We affirm.

The State Farm policy defines underinsured motor vehicle to mean:

> 1. a land motor vehicle, the ownership, maintenance or use of which is:
>     a. not insured or bonded for bodily injury liability at the time of the accident . . ..

Clerk's Papers, at 139.

However, the policy narrows substantially the statutory definition of an underinsured motor vehicle by these two exclusions:

> An *underinsured motor vehicle* does not include a land motor vehicle:
> . . . .
>     3. owned or operated by a self-insurer, up to the extent that *bodily injury* limits of liability established by the financial responsibility law or any similar law are payable under a certificate of self-insurance;
>     4. owned by any government or any of its political subdivisions or agencies to the extent it is obligated to pay for the *bodily injury* . . ..

Clerk's Papers, at 140.

Thus, the policy first provides the coverage mandated by the statute, but then subtracts coverage, up to the limits of the financial responsibility law, if the owner is self-insured or is a government, its political subdivision or agency.

■ The mandatory coverage is part of the insurance policy. *Touchette v. Northwestern Mut. Ins. Co.*, 80 Wn.2d 327, 328, 494 P.2d 479 (1972). The exclusions deny coverage when the statute, by its terms, requires coverage. Thus, the exclusions are void. *Britton v. Safeco Ins. Co. of Am.*, 104 Wn.2d 518, 526, 707 P.2d 125 (1985).

State Farm argues, however, that the intent and purposes of the Legislature and our cases demonstrate the Legislature never intended to mandate UIM coverage in the case of self-insureds and governmental agencies, and the whole purpose of UIM coverage is to protect against financially irresponsible motorists. *Touchette v. Northwestern Mut. Ins. Co.*, *supra*; *Finney v. Farmers Ins. Co.*, 92 Wn.2d 748, 600 P.2d 1272 (1979); *Blackburn v. Safeco Ins. Co.*, 115 Wn.2d 82, 794 P.2d 1259 (1990).

The cases do refer to protection against financially irresponsible motorists. However, it is the Legislature which has defined the circumstances in which such protection is mandated. Further, the Legislature has not authorized these exclusions in defining underinsured motorists even though it has amended the statute a number of times, including authorization of specific exclusions. RCW 48.22.030(2), (5), (6).

■ For evaluating UIM coverage exclusions, we have developed an extensive body of jurisprudence over the past 20 years. These cases fall into two categories. The first line of cases involves those situations where the exclusion is directly contrary to specific language in the statute. "The specific contract terms of the policy must be read along with the statute to see if the terms are void and unenforceable." *Blackburn*, at 88. When language in the policy explicitly conflicts with the statute, the offending language is stricken.

The second line of UIM cases addresses the situation where an exclusion is neither permitted nor foreclosed by the UIM statute. In those cases, this court has typically undertaken a careful analysis of the public policies underlying the UIM statute. An exclusion will be permitted if it comports with the declared public policies of the UIM statutory scheme. *Blackburn*, at 86; *see also Millers Cas. Ins. Co. v. Briggs*, 100 Wn.2d 1, 7-8, 665 P.2d 891 (1983). For example, in *Lovato v. Liberty Mut. Fire Ins. Co.*, 109 Wn.2d 43, 742 P.2d 1242 (1987), we approved an exclusion which limited UIM coverage to the United States and its territories. The exclusion was permitted because "nothing in the UM/UIM statute, RCW 48.22.030, indicates a public policy contrary to this territorial limitation." *Lovato*, at 47. We have employed this public policy analysis on numerous occasions. *See, e.g., Blackburn*, at 84 (holding that exclusion for covered vehicle was valid); *Millers Cas.*, at 7-8 (finding that excluding insured vehicle from UIM coverage comports with public policy); *Kenworthy v. Pennsylvania Gen. Ins. Co.*, 113 Wn.2d 309, 779 P.2d 257 (1989) (holding that policy provision requiring insured to share arbitration costs impermissibly "whittled away" at the statutory UIM coverage); *Britton*, at

528 (evaluating policy exclusion in terms of public policy); *Mutual of Enumclaw Ins. Co. v. Wiscomb*, 97 Wn.2d 203, 213, 643 P.2d 441 (1982) (*Wiscomb* II) (family exclusion violates statute's stated public policy); *Touchette*, at 335 (public policy of UIM statute overrides insurance contract exclusion). "Exclusions rest on diverse grounds, and each exclusion must be analyzed in terms of the policies which are said to support it." *Mutual of Enumclaw Ins. Co. v. Wiscomb*, 95 Wn.2d 373, 382, 622 P.2d 1234 (1980) (*Wiscomb* I).

In effect, these cases establish a 2-part inquiry: (1) does the proposed exclusion conflict with the express language of the UIM statute?; and if not, (2) is the exclusion contrary to the UIM statute's declared public policy? An exclusion will be sustained only where both inquiries can be answered in the negative. We now turn to the exclusions in the State Farm policy.

The self-insurance exclusion fails the first part of the above test because it seeks to narrow the definition of underinsured motorist beyond the specific parameters set out in the UIM statute. From the statute's plain language, there is no doubt that the City comes within the underinsured motorist definition. *See Public Employees Mut. Ins. Co. v. Mucklestone*, 111 Wn.2d 442, 443, 758 P.2d 987 (1988). At the time of the accident, the City carried no "liability bond or insurance policy" for its vehicles. RCW 48.22.030(1). State Farm urges a broad understanding of the term "insurance policy" so as to include self-insurance. However, such a reading is specifically foreclosed by RCW Title 48, which defines "insurance" as "a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies." RCW 48.01.040. When a statute is unambiguous, its meaning must be derived from the actual language chosen by the Legislature. *Everett Concrete Prods., Inc. v. Department of Labor & Indus.*, 109 Wn.2d 819, 822, 748 P.2d 1112 (1988). By its very nature, self-insurance does not involve this type of third party arrangement. *See Jones v. Henry*, 542 So. 2d

507, 509 (La. 1989) ("Self-insurance . . . is a misnomer. It is not insurance, but instead is one of four methods by which a person can satisfy the [financial responsibility statute]. . . . Consequently, the certificate of self-insurance cannot be considered a 'policy' for the purposes of uninsured motorist coverage requirements under [the statute]"). Because the self-insurance exclusion conflicts with the specific language of the UIM statute, we hold that it is void and unenforceable.

Turning to the government-owned vehicle exclusion, it passes the first test because no language in the UIM statute specifically forecloses this policy provision. Therefore, we must consider whether it conflicts with the public policy behind the statute. The purposes of the UIM statute are broad and well known:

> [The uninsured motorist statute] is but one of many regulatory measures designed to protect the public from the ravages of the negligent and reckless driver. . . . The statute is both a public safety and a financial security measure. Recognizing the inevitable drain upon the public treasury through accidents caused by insolvent motor vehicle drivers who will not or cannot provide financial recompense for those whom they have negligently injured, and contemplating the correlated financial distress following in the wake of automobile accidents and the financial loss suffered personally by the people of this state, the legislature for many sound reasons and in the exercise of the police power took this action to increase and broaden generally the public's protection against automobile accidents.

(Italics omitted.) *Wiscomb* II, at 208 (quoting *Touchette v. Northwestern Mut. Ins. Co.*, 80 Wn.2d 327, 332, 494 P.2d 479 (1972)). In interpreting the UIM statute, it "should receive from the courts a construction that will effectuate its manifest purpose." *Touchette*, at 333.

State Farm contends that the government-owned vehicle exclusion comports with the statute's declared public policies. Specifically, the City of Seattle is eminently capable of paying any losses which might arise from an employee's negligence. Plaintiff counters that not all governments enjoy the City of Seattle's immense resources.

■■ Although State Farm's argument might be persuasive as applied to the City of Seattle, there is nothing before us which indicates that government entities in general possess similar financial resources. Governmental bodies like small towns, school districts, and local utility districts would be hard pressed to satisfy a judgment arising from a serious accident where liability can range into the millions of dollars. In order to ensure certain financial compensation, the UIM statute does not operate on a case-by-case basis. As the Supreme Court of Maine has explained:

> It is true, as we recently stated in *Lanzo v. State Farm Mut. Auto. Ins. Co.*, 524 A.2d 47, 50 (Me.1987), that the "legislative focus in enacting [UIM statute] was to provide recovery for injuries caused by financially irresponsible drivers." It is critical to note, however, that the Legislature mandated coverage for all uninsured motorists, without differentiating between the financially responsible and the financially irresponsible. Notwithstanding the motivation for the enactment of [UIM statute], coverage is mandated for all uninsured motor vehicles without regard to the fact that certain uninsured drivers may be financially responsible.

*Young v. Greater Portland Transit Dist.*, 535 A.2d 417, 420 (Me. 1987).

The mere fact that a tortfeasor is a government entity does not guarantee its ability to compensate accident victims. As a result, we hold that the government-owned vehicle exclusion violates the UIM statute by decreasing coverage beyond the statutory minimum.[1] We are supported in this conclusion by a majority of other jurisdictions, which have held that the government-owned vehicle exclusion is more restrictive than that allowed by statute. *See, e.g., Martin v. State Farm Mut. Auto. Ins. Co.*, 755 S.W.2d 638, 640 (Mo. Ct. App. 1988); *Young*, at 420; *Powell v. Allstate Ins. Co.*, 233 So. 2d 38 (La. Ct. App. 1970); *see generally 2 No-*

---

[1] State Farm argues that without the exclusion, plaintiff would be placed in a better position having run into an uninsured motorist rather than an insured one. *See Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 685, 801 P.2d 207 (1990). However, although it may be easier to recover from one's own insurance company rather than a tortfeasor, plaintiff will receive no more compensation from her State Farm policy than she would have received from the City of Seattle.

*Fault and Uninsured Motorist Automobile Insurance* § 24.30[13][a] (1991).

Quite apart from the foregoing which is dispositive, the self-insurance statutes and the policy exclusion create other questions. The original self-insurance statute permits any *"person"* in whose name more than 25 vehicles are registered to qualify as a self-insurer. "Person" is defined in RCW 46.04-.405: " 'Person' includes every natural person, firm, copartnership, corporation, association, or organization." Elsewhere in RCW Title 46 when the Legislature intended to refer to cities and other governmental units it did so specifically, *e.g.*, RCW 46.04.280, .355; RCW 46.08.065-.068. The question, unbriefed, is whether "person" includes a municipal corporation.

A further question is raised by RCW 48.62. Because this chapter was not effective until 1992, it does not apply to this case, but approval of the self-insurance exclusion would raise this question in the future. RCW 48.62.011 provides: "This chapter is intended to provide the *exclusive* source of local government entity authority to individually or jointly self-insure risks . . .". (Italics ours.) RCW 48.62 contemplates a "formal program of advance funding and management . . .". RCW 48.62.021(3). This starkly contrasts with the original self-insurance statute which makes no such requirement. RCW 46.29.630. State Farm relies on RCW 48.62 as a source for showing legislative intent. Brief of Appellant, at 17-18.

The State Farm exclusion itself raises unbriefed questions. It denies coverage whenever a vehicle is owned or operated by a self-insurer. By its terms it is not limited to a "person" who holds a certificate of self-insurance. The exclusion is "up to the extent that *bodily injury* limits . . . are payable under a certificate of self-insurance." Clerk's Papers, at 140. Thus, arguably, the exclusion applies to *any* self-insurer, regardless whether that "person" is the holder of a certificate, but restricts itself to limits payable under a certificate of self-insurance. The statute makes no provision for what is "payable under" it. It relates only to the ability to pay a judgment obtained against such person. RCW 46.29-

.630. We do not answer these unbriefed questions, but they lurk in the future if a self-insurance exclusion is approved.

A response to the dissent is necessary. The dissent's reasoning contains its own destruction. It states: "Of course, a full self-insured exclusion might not be valid under this analysis of the limited self-insured exclusion." It continues: "A full self-insured exclusion would raise the grave possibility of a self-insured being unable to actually meet a large judgment." Dissent, at 689. This speculation by the dissent is nothing more than just that — speculation.

These remarkable assumptions by the dissent necessarily admit that the self-insured exclusion is not permitted by the statute. Yet amazingly, the dissent concludes that a "little" exclusion is alright, but a "big" exclusion would be prohibited.

Next, the dissent assumes that the exclusion "only excludes coverage when the self-insured has a legally identifiable means of payment." (Footnote omitted.) Dissent, at 686. There is no such requirement in the statute. All the self-insurer has to do is convince the Department of Licensing, *at the time of the application*, that it "is possessed and will continue to be possessed of ability to pay judgment obtained against such person." RCW 46.29.630(2). It is a complete mystery where the dissent finds a requirement that there must be a "legally identifiable means of payment." The certificate here was obtained 43 years ago. There might not be a question as to the City of Seattle, but what of a small municipal corporation which has been drastically altered in its financial condition in the last 43 years?

Unless the Director undertakes revocation proceedings, upon "reasonable grounds", a certificate of self-insurance is good forever. RCW 46.29.630(3).

The generalized requirements to obtain a certificate are quite different from the protection of UIM coverage by a regulated insurance company with the underlying protections of the Washington Insurance Guaranty Association Act, RCW 48.32. The well known bankruptcy proceedings of major national companies cast doubt upon the dissent's

erroneous assumption that a self-insurer has "a legally iden-
tifiable means of payment."

Finally, the dissent finds the majority to be "most dramat-
ically inconsistent with this court's decisions in *Millers Cas.
Ins. Co. v. Briggs*, 100 Wn.2d 1, 665 P.2d 891 (1983) and
*Blackburn v. Safeco Ins. Co.*, 115 Wn.2d 82, 794 P.2d 1259
(1990)." Dissent, at 683. The dissent simply misses the
point. In both those cases there was liability insurance. Here
there is none. In both those cases the claimants were pro-
tected by the liability coverage of the policy. Here there is no
liability policy as required by the statute. The theory of
those cases is summarized: "The result of dual recovery in
the instant case would transform underinsured motorist
coverage into liability insurance." *Millers Cas. Ins. Co. v.
Briggs*, *supra* at 8. What the dissent does is transform no
liability coverage into liability coverage, but only so long as
it is just a partial conversion, not a complete conversion. The
dissent notwithstanding, the holding of the majority does
not conflict with the cited cases nor does it conflict with our
prior analytical approach to UIM coverage questions.

The trial court is affirmed.

ANDERSEN, C.J., and DOLLIVER, SMITH, and JOHNSON, JJ.,
concur.

UTTER, J. (concurring in part, dissenting in part) — Today
the majority unnecessarily invalidates a provision of an
insurance contract on the grounds of a perceived conflict
with Washington's underinsured/uninsured motorist (UIM)
law. In doing so, the majority introduces a new layer of
confusion into the administration of a statute which has
already established a reputation as one of the most abstruse
in the state. Because I believe a different analysis of the
limited self-insured exclusion at issue in this case can be
made consistently with the language and purposes of our
UIM law, I respectfully dissent from the majority's opinion
in that regard.

I

The UIM statute, RCW 48.22, establishes mandatory UIM coverage which must be included in motor vehicle liability policies. If a motor vehicle liability policy is issued or renewed for a vehicle registered or principally garaged in this state, it must include a minimum level of UIM coverage. RCW 48.22.030(2).[2] In implementing this mandatory coverage, the statute defines "underinsured motor vehicle" as follows:

> (1) "Underinsured motor vehicle" means a motor vehicle with respect to the ownership, maintenance, or use of which either no bodily injury or property damage liability bond or insurance policy applies at the time of the accident, or with respect to which the sum of the limits of liability under all bodily injury or property damage liability bonds and insurance policies applicable to a covered person after an accident is less than the applicable damages which the covered person is legally entitled to recover.

RCW 48.22.030(1).

The City of Seattle (City) does not maintain an automobile liability insurance policy, but is instead certified as a self-insurer. Originally, the City received its certification as a self-insurer from the State of Washington on February 1, 1950. See Clerk's Papers, at 159. The statutory authorization for self-insurance at the time provided:

> 2. The Director may . . . issue a certificate of self-insurance if he is reasonably satisfied that such person is able and will continue to be able to pay judgments rendered against him for damages arising out of motor vehicle accidents within this state.

Laws of 1949, ch. 211, § 31-m. The existing version of the statute is substantively identical.[3]

One important purpose of self-insurance under RCW 46.29-.630 is to meet the financial responsibility requirements of the

---

[2] RCW 48.22.030(3) and (4) allow insureds to reject all or part of their UIM coverage if rejection is made in writing.

[3] The self-insurance statute was most recently amended in 1963. See Laws of 1963, ch. 169, § 63; RCW 46.29.630(2).

motor vehicle laws. RCW 46.30, the law governing financial responsibility, demands that all persons driving motor vehicles in Washington satisfy certain requirements relating to their ability to pay judgments arising out of automobile accidents. RCW 46.30.010. One method by which a party can meet this requirement is through possession of a validly issued certificate of self-insurance from the State. RCW 46.30.020(1)(a). The City has obtained such a certificate and thus meets the requirements of the financial responsibility laws.

The dispute in this case is created by an exclusion of UIM coverage which is based on the self-insurance law. Under the State Farm policy issued to the Kyrkoses, an "underinsured motor vehicle" is defined as:

1. a land motor vehicle, the ownership, maintenance or use of which is:
    a. not insured or bonded for bodily injury or liability at the time of the accident; . . ..

Clerk's Papers, at 139.

The policy excludes certain types of vehicles from this definition. Among the vehicles excluded are those:

3. owned or operated by a self-insurer, up to the extent that *bodily injury* limits of liability established by the financial responsibility law or any similar law are payable under a certificate of self-insurance[.]

Clerk's Papers, at 140.[4] Thus, to the extent damages caused by a self-insured are payable up to the limits of the financial responsibility law, the State Farm policy excludes those damages from the definition of "underinsured motor vehicle". It is worth noting that State Farm's exclusion does not exclude all damages caused by a self-insured, only those payable under a certificate of self-insurance. State Farm did in fact only deny coverage to the extent of the financial responsibility limits, $25,000 per person, and $50,000 per accident.

---

[4]The State Farm policy also contains an exclusion for vehicles owned by governmental units. Since I agree with the majority's conclusion that such an exclusion is contrary to the public policy of the UIM laws, majority, at 675-76, I do not discuss this exclusion.

## II

In deciding this case, the majority interprets our past jurisprudence as creating a 2-part test for analyzing the validity of exclusions from UIM coverage. This 2-part inquiry is:

> (1) does the proposed exclusion conflict with the express language of the UIM statute?; and if not, (2) is the exclusion contrary to the UIM statute's declared public policy?

Majority, at 674. If either question is answered in the affirmative, the exclusion from UIM coverage is void.

As a general matter, this 2-part inquiry is an appropriate means of approaching exclusions from UIM coverage. In fact, it does not differ substantially from ordinary principles of statutory interpretation, whereby this court first looks to the language of the statute and then to the policies which motivate the statute if the statute's language does not provide a clear answer. *Morris v. Blaker*, 118 Wn.2d 133, 142-43, 821 P.2d 482 (1992); *Roy v. Everett*, 118 Wn.2d 352, 357, 823 P.2d 1084 (1992).

The limited self-insured exclusion passes the first prong of this analysis. There is no explicit prohibition of such exclusions in the statute. *See generally* RCW 48.22. The court's attention should therefore turn to the second prong, analyzing the limited self-insured exclusion in light of the policies which underlie our UIM law.[5]

The majority, however, concludes that the exclusion does in fact contradict the express language of RCW 48.22.030 and holds it invalid. To accomplish this result, the majority applies the first prong of its 2-part test in a fashion which is contrary to this court's prior UIM jurisprudence. Perhaps inadvertently, the majority has *sub silentio* called into ques-

---

[5]One problem generated by the majority's formulation of the 2-part test is its reference to the UIM statute's "declared public policy". Majority, at 673-74. As this court has recognized, "the statute does not define the legislative intent or purpose behind the UIM statute." *Blackburn v. Safeco Ins. Co.*, 115 Wn.2d 82, 87, 794 P.2d 1259 (1990). As evidenced in part II, *infra*, I interpret the second prong of the analysis to involve consideration of the public policy behind the statute as developed in our case law.

tion a number of our previous decisions, exposing apparently settled law to new rounds of litigation.

The majority's rationale for invalidating the limited self-insured exclusion is straightforward: It notes that the definition of underinsured motor vehicle in RCW 48.22 refers only to *liability bonds* and *insurance policies* and therefore concludes that the Legislature intended to preclude the use of certificates of self-insurance in the definition of underinsured motor vehicles. Majority, at 674-75. Without explicitly stating so, the majority is employing the familiar rule that "[e]xpress mention of one thing [in a statute] implies the exclusion of another". *Kreidler v. Eikenberry*, 111 Wn.2d 828, 835, 766 P.2d 438 (1989); *In re Eaton*, 110 Wn.2d 892, 898, 757 P.2d 961 (1988). With regard to another statute, such an approach might be an acceptable means of discerning legislative intent. Also, if this were a case of first impression involving the UIM statute, the majority's approach might be reasonable as a means of establishing a framework in which to analyze UIM exclusions.

In the context of our UIM jurisprudence as it has developed over the past 20 years, however, the majority's approach is unacceptable. As discussed in more detail below, the rule which the majority employs has been explicitly rejected by this court in analyzing UIM exclusions. The majority's approach at this point undermines a number of our previous decisions and thus will only increase the already considerable confusion associated with UIM law.[6]

The majority's approach to the UIM law is most dramatically inconsistent with this court's decisions in *Millers Cas. Ins. Co. v. Briggs*, 100 Wn.2d 1, 665 P.2d 891 (1983) and *Blackburn v. Safeco Ins. Co.*, 115 Wn.2d 82, 794 P.2d 1259 (1990). In both of these cases, the court considered the validity of policies which excluded UIM coverage for injuries caused by auto-

---

[6]"[E]ven after multiple amendments, 'the statute remains a patchwork of provisions that create ambiguity and confusion.'" *Blackburn*, 115 Wn.2d at 87 n.3 (quoting Dellwo & Conniff, *The Washington Underinsured Motor Vehicle Insurance Statute: Reading the Legislature's Mind*, 23 Gonz. L. Rev. 235, 235 (1987-1988)).

mobiles already insured under the policy. *Millers*, 100 Wn.2d at 3; *Blackburn*, 115 Wn.2d at 86. That is, the exclusions prohibited an insured from claiming UIM coverage when the automobile which caused the injury was the same automobile which was insured by the insured's liability policy. RCW 48.22 does not explicitly indicate any intent with respect to UIM coverage for insured automobiles. *See generally* RCW 48.22.[7] Furthermore, the exclusion involved in *Millers* operated by excluding insured automobiles *from the definition of underinsured motor vehicle. Millers*, 100 Wn.2d at 3.

Thus, the circumstances of the "insured automobile" exclusion at issue in *Millers* (and later *Blackburn*) and the "self-insured" exclusion at issue in this case are identical. With respect to both exclusions, there is no explicit prohibition in the statute, and the exclusions apply to the definition of underinsured motor vehicle. In *Millers,* the court upheld the insured automobile exclusion, 100 Wn.2d at 8, and reaffirmed this decision in *Blackburn*, 115 Wn.2d at 85-86.

To uphold the exclusion in *Millers*, the court specifically rejected the approach now taken by the majority. Justice Dimmick, writing for the court, stated:

> [Petitioners] maintain that since the Legislature set forth several permissible exceptions, and *did not expressly allow the insurer to restrict the definition of an underinsured vehicle as Millers' policy does,* the restriction is invalid. We disagree.

(Italics mine.) 100 Wn.2d at 5. In other words, the absence of express permission for an exclusion, even when relating to the definition of an underinsured motor vehicle, is not dispositive as to the exclusion's validity.

The majority argues that, absent the limited self-insured exclusion, the City's vehicle would fall within the statutory definition of underinsured motor vehicle. Majority, at 674-75. That may be true, but it is equally true that, absent the insured automobile exclusion in *Millers* and *Blackburn*, the vehicles there would have fallen within the definition of underinsured motor vehicle as well. It is impossible to apply

---

[7]The statute does specifically allow an exclusion for *non*insured automobiles owned by the insured or a family member. RCW 48.22.030(2).

the approach adopted by the majority today without calling those decisions into question and thereby creating even more grounds for litigation under our UIM laws.[8] Unless the court is willing to jettison the analysis explicitly developed in *Millers* and implicitly followed in *Blackburn*, the conclusion is inescapable that the limited self-insured exclusion is not contrary to the express provisions of the UIM statute.

### III

Once an exclusion has survived comparison to the express language of the statute, it must be then analyzed with respect to the structure and purposes of the UIM law.

Far from contradicting the statute, the limited self-insured exclusion actually replicates the statute's own provisions. Under the statute, a vehicle with liability insurance is deemed to be "underinsured" only if the vehicle's liability insurance is insufficient to pay a judgment against the owner or operator of the vehicle. *See* RCW 48.22.030(1). Similarly, the State Farm policy treats a vehicle under a self-insurance certificate as "underinsured" only if the liability limits under the financial responsibility law are insufficient to pay a judgment against the owner or operator of the vehicle. In both cases, damages are compared with the amounts legally available to determine whether or not those amounts are adequate. In both cases, if the legally available amounts are insufficient, the UIM policy provisions "kick in" to cover as much of the difference as required. The limited self-insured exclusion is thus in effect merely an extension of the approach already contained within the UIM statute itself.

A facial similarity to the statutory scheme, however, is insufficient to validate a specific UIM exclusion. Instead, when considering the validity of exclusions which are not

---

[8]Arguably, *Lovato v. Liberty Mut. Fire Ins. Co.*, 109 Wn.2d 43, 742 P.2d 1242 (1987) would also be subject to reexamination under the majority's logic. In *Lovato*, this court upheld an exclusion for extraterritorial UIM coverage. There is no express permission for an extraterritorial exclusion within the UIM statute. Absent the exclusion for extraterritorial accidents, the Lovatos' accident would have been covered. Under the majority's approach the exclusion should have been stricken; nevertheless, the exclusion was upheld. 109 Wn.2d at 46-47.

explicitly authorized, we look to the public policies behind the UIM statutory scheme. *Blackburn*, 115 Wn.2d at 86; *Millers*, 100 Wn.2d at 7-8. In conducting this analysis, the court also examines the goals which the exclusion in question is purported to further. "Exclusions rest on diverse grounds, and each exclusion must be analyzed in terms of the policies which are said to support it." *Mutual of Enumclaw Ins. Co. v. Wiscomb*, 95 Wn.2d 373, 382, 622 P.2d 1234 (1980) (*Wiscomb* I).

"The purpose of the statute is to allow an injured party to recover those damages which would have been received had the responsible party maintained liability insurance." *Britton v. Safeco Ins. Co. of Am.*, 104 Wn.2d 518, 522, 707 P.2d 125 (1985) (quoting *Finney v. Farmers Ins. Co.*, 92 Wn.2d 748, 751-52, 600 P.2d 1272 (1979)). *Accord, Brown v. Snohomish Cy. Physicians Corp.*, 120 Wn.2d 747, 756, 845 P.2d 334 (1993); *Kenworthy v. Pennsylvania Gen. Ins. Co.*, 113 Wn.2d 309, 314, 779 P.2d 257 (1989).

Consideration of the policy behind the UIM statute reveals the validity of the limited self-insured exclusion. Like the UIM statute itself, the limited self-insured exclusion only excludes coverage when the self-insured has a legally identifiable means of payment.[9] The exclusion in this case does not exclude *all* damage caused by self-insurers, but rather only up to the limits of the financial responsibility law. Thus, the exclusion provides protection for those injured by self-insured vehicles precisely equal to the protection available to those injured by ordinary insured vehicles.

Invalidating the limited self-insured exclusion would actually create the anomalous situation that an accident victim could be *better off* being hit by a self-insured than by an ordinary insured. When a party is injured by an ordinary

---

[9]The majority suggests that a certificate of self-insurance is not a legally identifiable means of payment. Majority, at 678-79. The Legislature, however, has determined that such a certificate is sufficient to meet the requirements of the State's financial responsibility laws. RCW 46.30.020(1)(a). Thus, the Legislature has determined that the possessor of such a certificate will be able to pay a judgment, at least to the extent of the financial responsibility laws. Perhaps the majority feels the Legislature has been unwise in this respect, but, of course, we are not free to replace the Legislature's judgment with our own.

insured, he or she is typically required to proceed against the tortfeasor and the tortfeasor's insurance company for compensation for their damages. If, for example, the City had been in possession of a liability insurance policy, the Kyrkoses would have been required to proceed first against the City and the City's insurance company. The City's insurance company would have been liable to the extent of the City's liability policy, and State Farm would have been liable to the Kyrkoses under their UIM policy for any damages not covered by the City's policy. Because the City is self-insured, however, the Kyrkoses argue they should be absolved of proceeding against the City, as in the ordinary case, and instead be allowed to proceed directly against their insurance company in arbitration for the full amount of their damages (up to the limits of their UIM policy). Through arbitration against State Farm, the Kyrkoses hope to avoid the potential inconveniences of litigation faced by those who are the victims of ordinary insured tortfeasors.

In short, the Kyrkoses are arguing the City's unique status as a self-insured mandates they receive preferential treatment under the UIM statute. This result runs contrary to the policy of the statute. The UIM law ensures only that victims of underinsured motor vehicles receive *equal* treatment as victims of insured motor vehicles, not that they receive *preferential* treatment. "The injured party is not entitled to be put in a better position, by virtue of being struck by an underinsured motorist, than she would be had she been struck by a fully insured motorist." *Keenan v. Industrial Indem. Ins. Co.*, 108 Wn.2d 314, 321, 738 P.2d 270 (1987). *Accord, Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 685-86, 801 P.2d 207 (1990). This principle of equal treatment supports the enforceability of the limited self-insured exclusion.

It also might be argued the limited self-insured exclusion is invalid because the statute requires the most expeditious calculation of UIM coverage. There is an important value to being able to determine as quickly as possible whether or not a particular victim will be covered by their UIM policy. Automobile victims would suffer substantially if they could

not receive UIM coverage until a judgment had been rendered and a tortfeasor had manifested its inability to pay the judgment. While these concerns are valid, they are not relevant to the question before us.

In order to facilitate the expeditious calculation of whether a given tortfeasor is underinsured or not, the statute relies on the readily identifiable liability limits included in "bonds" and "insurance policies". Very simply, if damages exceed these limits, the tortfeasor is underinsured. The limited self-insured exclusion mandates an equally simple calculation. If damages exceed the minima of the financial responsibility law, then the tortfeasor is underinsured.[10] Public policy in favor of readily identifiable UIM coverage therefore does not require the invalidation of the limited self-insured exclusion.

Construing RCW 48.22.030 to permit a limited self-insured exclusion also furthers other public policy goals. First, it harmonizes the UIM law with the financial responsibility law. We have in the past recognized the value of considering the financial responsibility laws in understanding the provisions of the UIM statute. In *Mutual of Enumclaw Ins. Co. v. Wiscomb*, 97 Wn.2d 203, 643 P.2d 441 (1982) (*Wiscomb* II), for example, we relied on the purposes behind the financial responsibility law in striking down a "family or household" UIM exclusion clause. 97 Wn.2d at 206-09.

Second, allowing the limited self-insured exclusion recognizes that insurance agreements are essentially contractual in nature. *Sears, Roebuck & Co. v. Hartford Accident & Indem. Co.*, 50 Wn.2d 443, 449, 313 P.2d 347 (1957). "[A]n insurer is permitted to limit its liability unless to do so would be inconsistent with public policy". *Britton*, 104 Wn.2d at 528; *see also Trinity Universal Ins. Co. v. Willrich*, 13 Wn.2d 263, 272, 124 P.2d 950, 142 A.L.R. 1 (1942). While we should not rely upon "freedom of contract" ideals to allow insurers to

---

[10]Of course, a victim may still be required to litigate or arbitrate the amount of damages, but this requirement is a necessary corollary of our UIM statute. *See* 3 A. Widiss, *Uninsured and Underinsured Motorist Insurance* § 35.2 (2d ed. 1985) (under UIM laws like Washington's, damages are always a question of fact to be determined prior to applicability of UIM coverage).

violate public policy as embodied in the UIM statute, *Wiscomb* II, 97 Wn.2d at 210-12, such principles are a valid consideration when no public policy is being violated. *See State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 481, 687 P.2d 1139 (1984).

Of course, a full self-insured exclusion might not be valid under this analysis of the limited self-insured exclusion. A full self-insured exclusion would raise the grave possibility of a self-insured being unable to actually meet a large judgment. The victim of an inadequately financed self-insured could then be deprived of compensation altogether. In this case, however, we are faced only with a limited self-insured exclusion and such questions are therefore academic.

For these reasons, I believe it is unnecessary to invalidate the limited self-insured exclusion contained within the State Farm policy. With all due respect, I dissent from that portion of the court's opinion.

DURHAM and GUY, JJ., concur with UTTER, J.

Reconsideration denied August 3, 1993.