

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE JUN 0 7 2018
Fairhurst, CJ
CHIEF JUSTICE

This opinion was filed for record

at 8:00 a.m. on June 7, 2018

Susan L. Carlson

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON IN | ) ) ) ) ) | No. 94771-6 |
| BRETT DURANT, on behalf of himself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | En Banc |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign automobile insurance company, | ) ) ) ) | |
| Defendant. | ) ) | Filed     JUN 0 7 2018 |

MADSEN, J.—This case concerns a class action insurance claim suit pending in federal court. The federal district court has asked this court to answer two certified questions concerning whether an insurer's use of a "maximum medical improvement" (MMI) provision violates WAC 284-30-395(1).

## FACTS

This case began with an auto policy claim by plaintiff Brett Durant. Durant has been a policyholder with State Farm Mutual Automobile Insurance Company since 1995 and carried $35,000 in personal injury protection (PIP) coverage. On July 21, 2012, Durant was injured in a motor vehicle accident. He opened a PIP claim with State Farm. State Farm then sent him a "coverage letter" that stated:

> The policy provides coverage for reasonable and necessary medical expenses that are incurred within three (3) years of the accident. *Medical services must also be essential in achieving maximum medical improvement for the injury you sustained in the accident.*

Docket (Dkt.) #30 (Decl. of Brett Durant) at 2 & Ex. C (emphasis added).[1]

Durant sought treatment with chiropractor Harold Rasmussen, DC, who diagnosed injuries including sprains to the neck, back, pelvis, and right shoulder. After a shoulder MRI (magnetic resonance imaging) showed a ligament sprain and "a possible small type I SLAP [(superior labral anteroposterior)] tear," Durant was referred to an orthopedic surgeon who diagnosed "mild bursitis/tendinitis," which was treated with physical therapy and cortisone injections. *Id.* at 2.

Four months after the accident, State Farm sent Dr. Rasmussen a form letter with blanks to fill in inquiring about Durant's progress. The letter was directed toward State Farm's MMI standard, asking, "Has the patient reached maximum medical improvement?" and "If the patient has not reached maximum medical improvement, what

---

[1] Citations are to the certified record as provided by the federal district court unless otherwise noted. *See* RCW 2.60.010(4), .030(2).

2

is your target maximum medical improvement date?" *Id.* at 2 & Ex. D. Dr. Rasmussen responded that Durant was not at MMI but his target date was "2-1-13." *Id.* at Ex. D.

Durant's injuries were not resolved by that date, and he continued to receive chiropractic and massage therapy. State Farm then sent another letter to Dr. Rasmussen, which inquired, "You have treated Brett past his given MM[I] date of 2/1/2013. Please explain." Dkt. #32 (Decl. of Tyler Firkins), Ex. Q at 11 of 13. Dr. Rasmussen replied, "Patient was not stable and needed treatment to 3/27/2013." *Id.*

Durant continued to have back, shoulder, and pelvic issues and continued to receive care. His care providers billed his PIP claim as before, but State Farm denied each bill on the basis that, "[s]ervices are not covered, as your provider advised us you previously reached maximum medical improvement." Dkt. #30, Ex. F.

Durant retained an attorney who wrote to State Farm asking them to pay the outstanding medical bills. The attorney explained that State Farm must use the standard authorized by WAC 284-30-395(1); that whether Durant had reached MMI was irrelevant; and that unless State Farm had a competent medical opinion that Durant's treatment was not reasonable, necessary, or related, State Farm must pay the bills.

The attorney provided State Farm a letter from Dr. Rasmussen explaining that Durant's continuing injuries meant that he would require periodic care for his spinal and pelvic dysfunction and that during periods of exacerbation, Durant should receive treatment to restore movement and to reduce his pain. The State Farm claim representative ignored Dr. Rasmussen's opinion and authored a letter that reiterated the previous denial, noted that Durant had previously reached MMI, and stated that the

3

Office of the Insurance Commissioner (OIC) "thoroughly reviews and approves policy language proposed by insurance companies." Dkt. #30, Ex. H. Durant's attorney responded by letter that Durant needed medical treatment from time to time due to exacerbations in order to maintain his recovery and that this treatment should be considered reasonable, necessary, and related under WAC 284-30-395(1). By that time, Durant had unpaid medical bills of more than $1,000 that had been denied by State Farm, but State Farm stood by its decision and continued to deny payment based on its MMI standard.

Durant filed this action in King County Superior Court in 2015, alleging that State Farm's use of the MMI standard violates its duty of good faith, breaches the insurance contract, violates the Insurance Fair Conduct Act, RCW 48.30.010-.015, and violates the Consumer Protection Act, chapter 19.86 RCW. State Farm removed the case to federal court. The United States District Court granted Durant's motion to certify a class of plaintiffs. State Farm moved for reconsideration. In denying the motion for reconsideration, the district court also granted Durant's motion to certify the following two questions to this court:

1. Does an insurer violate WAC 284-30-395(1)(a) or (b) if that insurer denies, limits, or terminates an insured's medical or hospital benefits claim based on a finding of "maximum medical improvement?"

2. Is the term "maximum medical improvement" consistent with the definition of "reasonable" or "necessary" as those terms appear in WAC 284-30-395(1)?[2]

ANALYSIS

First Certified Question: Does State Farm's limitation of medical claims based on its MMI provision violate WAC 284-30-395(1)(a) or (b)?

Durant contends that the plain language of the regulation in question answers the first certified question. We agree.

"Certified questions from federal court are questions of law that this court reviews de novo." *Brady v. Autozone Stores, Inc.*, 188 Wn.2d 576, 580, 397 P.3d 120 (2017) (citing *Carlsen v. Glob. Client Sols., LLC*, 171 Wn.2d 486, 493, 256 P.3d 321 (2011)). "This court may reformulate the certified question." *Id.* (citing *Allen v. Dameron*, 187 Wn.2d 692, 701, 389 P.3d 487 (2017)). Further, the meaning of a statute is a question of law that is reviewed de novo. *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001). This court's fundamental objective in determining what a statute means is to ascertain and carry out the legislature's intent. *Id.* If the statute's meaning is plain on its face, then courts must give effect to its plain meaning as an expression of what the legislature intended. *Id.* A statute that is clear on its face is not subject to judicial construction. *Id.*

This court interprets regulations under the rules of statutory construction. *Mader v. Health Care Auth.*, 149 Wn.2d 458, 472, 70 P.3d 931 (2003). It construes the act as a whole, giving effect to all of the language used. *Id.* If a regulation is unambiguous,

---

[2] Order at 4 (July 10, 2017) (granting certified question).

intent can be determined from the language alone, and the court will not look beyond the plain meaning of the words of the regulation. *Id.* at 473.

We begin with the plain language of the regulation. WAC 284-30-395(1) provides in relevant part:

> (1) Within a reasonable time after receipt of actual notice of an insured's intent to file a personal injury protection medical and hospital benefits claim, and in every case prior to denying, limiting, or terminating an insured's medical and hospital benefits, an insurer shall provide an insured with a written explanation of the coverage provided by the policy, including a notice that the insurer may deny, limit, or terminate benefits if the insurer determines that the medical and hospital services:
> (a) Are not reasonable;
> (b) Are not necessary;
> (c) Are not related to the accident; or
> (d) Are not incurred within three years of the automobile accident.
> *These are the only grounds for denial, limitation, or termination of medical and hospital services permitted* pursuant to RCW 48.22.005(7), 48.22.095, or 48.22.100.

(Emphasis added.) The final sentence of this regulation is unambiguous: an insurer may deny PIP benefits "only" for the reasons listed; no other reasons are permitted.

State Farm argues that its MMI language is merely definitional, explaining the "necessary" provision contained in the regulation. That is unconvincing. First, State Farm's policy language and its coverage letter present the MMI provision as an additional criterion that must be met for medical payments. The auto policy provides in relevant part as follows:

> *Personal Injury Protection Benefits* mean accident related:
>
> 1. Medical and Hospital Benefits, which are payments for *reasonable medical expenses* incurred within three years of the date of the accident.
>
> . . . .

> ***Reasonable Medical Expenses*** mean expenses:
>
> . . . .
>
> 2. incurred for necessary:
>
> > a. medical, surgical, X-ray, dental, ambulance, hospital, and professional nursing services, and
> >
> > b. pharmaceuticals, eyeglasses, hearing aids, and prosthetic devices
>
> that are rendered by or prescribed by a licensed medical provider within the legally authorized scope of the provider's practice *and are essential in achieving maximum medical improvement for the **bodily injury** sustained in the accident.*

Dkt #32, Ex. N at 7 of 24 (some emphasis added).

As presented, ***"Reasonable Medical Expenses"*** are defined as fees "incurred for *necessary*" medical services that are rendered by a medical provider "*and* are essential in achieving maximum medical improvement for the ***bodily injury*** sustained in the accident." *Id.* (some emphasis added). Because the MMI provision is stated conjunctively, it is not a definition of "necessary" but is instead a separate and additional prerequisite under the policy for payment of medical expenses. Moreover, the policy's introductory provisions explain that "[d]efined words and phrases [contained in the policy] are printed in boldface italics." *Id.* at 4 of 24. In the "reasonable medical expenses" quoted passage, "necessary" is not so designated. Thus, the plain language of the auto insurance policy does not support State Farm's assertion that its MMI provision defines the term "necessary."

Further, the coverage letter that Durant received states, in relevant part, as follows:

7

## MEDICAL AND HOSPITAL BENEFITS

The policy provides coverage *for reasonable and necessary medical expenses* that are incurred within three (3) years of the accident. Medical services *must also be essential in achieving maximum medical improvement* for the injury you sustained in the accident. To assist us in determining what expenses are reasonable and necessary, we may obtain a second opinion from a medical provider. We may also have the treatment reviewed by other medical professionals.

Occasionally there are situations where treatment may not be considered reasonable, necessary, or related to the accident. *Similarly, there may be cases where the services are not essential in achieving maximum medical improvement for the injury sustained in the accident.* In such cases, YOUR PIP COVERAGE MAY NOT PAY FOR ALL OF YOUR EXPENSES.

Dkt. #30, Ex. C. (emphasis added).

As can be seen, the first sentence in the first paragraph identifies three criteria for receiving medical payments: the medical services must be reasonable, necessary, and within three years of the accident. The second sentence adds a fourth criterion: the medical services "*must also* be essential in achieving maximum medical improvement for the injury you sustained in the accident." *Id.* (emphasis added). As presented, the fourth criterion is an additional requirement and does not refer back to or define any of the earlier listed criteria.

The second paragraph in the above quoted coverage letter warns that where the listed criteria are not met, the insured's PIP coverage may not pay for the expenses. Again, the four criteria are separately noted, indicating their separate status as a basis for denying coverage. Neither the policy language nor the coverage letter indicates that the MMI provision is a definition of "necessary" as State Farm contends.

In addition, as Durant's circumstance demonstrates, State Farm is using the MMI standard contained in its auto policy as the primary criterion for limiting the responsibility it would otherwise have to pay medical claims under the regulation; and it is doing so by applying a criterion not listed in the regulation. As noted, the regulation's plain language does not permit such additions. "No insurance contract can contain an inconsistent or contradictory term to any mandated, standard provision unless it is more favorable to the insured." *Kroeber v. GEICO Ins. Co.*, 184 Wn.2d 925, 929-30, 366 P.3d 1237 (2016) (citing RCW 48.18.130(2)); *see also Liberty Mut. Ins. Co. v. Tripp*, 144 Wn.2d 1, 12, 25 P.3d 997 (2001) (insurers cannot diminish statutorily mandated coverage through language in the insurance policy); *Britton v. Safeco Ins. Co. of Am.*, 104 Wn.2d 518, 531, 707 P.2d 125 (1985) (where legislature has mandated a certain amount and kind of coverage, insurer cannot avoid that obligation by a policy clause which has not been authorized by the legislature); *Kyrkos v. State Farm Mut. Auto. Ins. Co.*, 121 Wn.2d 669, 672, 852 P.2d 1078 (1993) (exclusions that deny statutory mandated coverage are void).

Also, since the regulation's terms "reasonable" and "necessary" are not defined, we use their ordinary (dictionary) meaning. *See Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 877, 784 P.2d 507 (1990) (undefined terms in insurance contracts "must" be given their plain, ordinary, and popular meaning, and courts may look to

standard English language dictionaries to determine common meaning).[3] State Farm's

MMI standard is clearly more restrictive than what would ordinarily be considered

reasonable and necessary medical care. As Durant's case demonstrates, treatment

prescribed by his provider to address his ongoing pain resulting from the car accident

would be permissible under the plain language of the regulation, which permits such

reasonable and necessary treatment. Only State Farm's employment of the more

restrictive MMI standard disallows such treatments and does so in violation of the

regulation.[4]

Finally, State Farm throughout its response brief relies on the assertion that its

auto policy containing the MMI provision has been repeatedly approved by the OIC,[5]

---

[3] The common meaning of "reasonable" is "not conflicting with reason : not absurd : not ridiculous . . . being or remaining within the bounds of reason : not extreme : not excessive." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1892 (2002).

The common meaning of "necessary" is "of, relating to, or having the character of something that is logically required or logically inevitable or that cannot be denied without involving contradiction." *Id.* at 1510.

[4] While not directly applicable to the present auto insurance policy context, WAC 182-500-0070, which applies in the medical assistance context, demonstrates that a reasonable view of what constitutes medically necessary care is far broader than State Farm's restrictive MMI standard. The noted WAC defines the term "medically necessary" in the medical assistance context as

> a term for describing requested *service which is reasonably calculated to prevent, diagnose, correct, cure, alleviate or prevent worsening of conditions in the client that endanger life, or cause suffering or pain,* or result in an illness or infirmity, or threaten to cause or aggravate a handicap, or cause physical deformity or malfunction. There is no other equally effective, more conservative or substantially less costly course of treatment available or suitable for the client requesting the service.

WAC 182-500-0070 (emphasis added).

[5] Any past approval by the OIC of State Farm's policy form is not dispositive on the issue of State Farm's compliance with WAC 284-30-395 in any event. RCW 48.18.510 provides that "[a]ny insurance policy . . . hereafter issued and otherwise valid, which contains any condition or provision not in compliance with the requirements of this code, shall not be rendered invalid thereby, but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy . . . been in full compliance with this code."

urging that the court should defer to the OIC's expertise on the issue. This court indeed gives substantial weight to an administrative agency's interpretations in its area of expertise, *see Port of Seattle v. Pollution Control Hr'gs Bd.*, 151 Wn.2d 568, 595, 90 P.3d 659 (2004) (due deference must be given to the specialized knowledge and expertise of an administrative agency), but the view expressed by the OIC is at odds with State Farm's assertions.

The OIC has filed an amicus brief forcefully stating that it has told carriers, including State Farm, that provisions adding criteria to PIP benefit payments violate WAC 284-30-395(1). The OIC amicus brief states, "The plain language of WAC 284-30-395 clearly prohibits the use of 'maximum medical improvement' as an additional grounds for the denial, limitation, or termination of PIP benefits aside from those listed in WAC 284-30-395(1)." Amicus Curiae Br. (OIC Br.) at 9. Relying on the language of the underlying statute, RCW 48.22.005(7), which provides that "'[m]edical and hospital benefits' means payments for all reasonable and necessary expenses incurred by or on behalf of the insured for injuries sustained as a result of an automobile accident," the OIC explains, "Nowhere does the statute exclude palliative care, or care to maintain a stable condition, rather than to improve a person's condition. Rather, the Legislature chose the phrase 'all reasonable and necessary' as the parameters for determining care that must be covered." OIC Br. at 10. Accordingly,

> A carrier cannot enforce a policy that denies medical and hospital services that are reasonable, necessary, related to the accident, and incurred within three years of the accident, but that do not achieve 'maximum medical improvement.[']

This interpretation of WAC 284-30-395 has been clearly communicated by the Commissioner, through his staff, to American Family Insurance in 2010, *and again to State Farm in 2015*, when taking exception to the language in their policies. In both instances, the Commissioner has directed carriers with non-compliant policy forms to submit new policy forms, with language that reflects the limited grounds available for the denial, limitation, or termination of medical and hospital benefits found in WAC 284-30-395(1). At no point has the Commissioner, or his staff, communicated a contrary interpretation of WAC 284-30-395(1). Based on the plain language of WAC 284-30-395(1), no carrier can use additional requirements, including "maximum medical improvement" as a basis for denying, limiting, or terminating medical and hospital coverage under PIP.

*Id.* at 11-12 (emphasis added). The OIC amicus brief concluded that the answer to the first certified question is yes. *Id.* at 12. For the reasons discussed above, we agree.

Second Certified Question: Is the term "maximum medical improvement" consistent with the definition of "reasonable" or "necessary" as those terms appear in WAC 284-30-395(1)?

We answer this certified question no. Washington statutes mandate that insurers writing automobile insurance offer PIP coverage, which includes coverage for payment of "*all* reasonable and necessary expenses incurred . . . for injuries sustained as a result of an automobile accident." RCW 48.22.005(7) (emphasis added); *see also* RCW 48.22.085 (requiring PIP coverage be offered), .095 (setting required minimum PIP coverage amounts), .100 (setting PIP benefit limits). The statutory requirement to offer PIP coverage implicates public policy. *See Sherry v. Fin. Indem. Co.*, 160 Wn.2d 611, 620-21, 160 P.3d 31 (2007). As discussed above, WAC 284-30-395(1) provides that the only permissible bases for denying PIP medical expense payments are if treatment is not reasonable, not necessary, not related to the accident, or not incurred within three years of

the accident. This regulation and the noted statutes reflect Washington's strong public policy in favor of the full compensation of medical benefits for victims of road accidents.

By contrast, State Farm's policy language limits payment of PIP medical benefits to services "essential in achieving maximum medical improvement." Dkt. #32, Ex. N at 7 of 24. This limitation denies Durant his PIP medical benefits necessary to return him to his pre-injury state. Excluding payment for palliative care from the reasonable and necessary medical expenses that are required to be paid under PIP coverage violates the public policy reflected in the statutory and regulatory scheme underlying PIP coverage, which is to fully compensate insureds for their actual damages from automobile accidents. *See Sherry*, 160 Wn.2d at 620-21 ("Washington State has long favored full compensation for those injured in automobile accidents."). State Farm's MMI provision is not consistent with the terms "reasonable" and "necessary" as those terms are used in RCW 284-30-395(1).

Defendant State Farm does not convincingly argue otherwise. It analogizes its MMI provision to the industrial insurance context and to maritime law, which are both distinguishable. State Farm cites a WAC regulation promulgated under Title 51 RCW, the Industrial Insurance Act (IIA), defining "proper and necessary" health care services, that states, "Once a worker's condition has reached maximum medical improvement, treatment that results only in temporary or transient changes is not proper and necessary." WAC 296-20-01002 "Proper and necessary" subsection (3). State Farm suggests that this regulatory limitation of payment for health care services by the Department of Labor and Industries supports its argument that medical services, after an insured reaches maximum

medical improvement, are not "necessary" services under its PIP policy or WAC 284-30-395(1). Def.'s Resp. Br. at 33-34. This is not an appropriate comparison, as the purposes in regulating medical services provided to injured workers under Title 51 RCW and in regulating medical services an insurer is required to pay in PIP coverage under Title 48 RCW are distinct.

Washington's public system of workers' compensation is not the equivalent of insurance. *See Wash. Ins. Guar. Ass'n v. Dep't of Labor & Indus.*, 122 Wn.2d 527, 532-33, 859 P.2d 592 (1993). The IIA was the product of a "grand compromise" in 1911, in which injured workers were ensured a swift, no-fault compensation system for injuries on the job and employers received immunity from civil suits by workers. *Birklid v. Boeing Co.*, 127 Wn.2d 853, 859, 904 P.2d 278 (1995). As a result, "employees may receive less than full tort damages in exchange for the expense and uncertainty of litigation." *Minton v. Ralston Purina Co.*, 146 Wn.2d 385, 390, 47 P.3d 556 (2002).

MMI in Title 51 RCW is related to the concept of fixed impairment, which plays a key role in the compromise reflected in the IIA. "Maximum medical improvement may be present though there may be fluctuations in levels of pain and function. . . . 'Maximum medical improvement' is equivalent to 'fixed and stable.'" WAC 296-20-01002 ("proper and necessary" subsection (3)). An injured worker is entitled to receive "proper and necessary" medical services, but once "maximum medical improvement" has been reached, the Department of Labor and Industries may consider the worker's condition "fixed and stable" and close the claim, at which point the worker may be eligible for an award of permanent disability, among other benefits. *See Boyd v. City of*

14

*Olympia*, 1 Wn. App. 2d 17, 27-28, 403 P.3d 956 (2017), *review denied*, 190 Wn.2d 1004 (2018).

MMI functions in two complementary ways in the workers' compensation system. First, it establishes that an injured worker has a "fixed and stable" impairment, thereby triggering disability benefits. *See id.* at 28; *see also* WAC 296-20-200(4). The disability benefits awarded constitute compensation for the value of the injured worker's permanent loss of function. *See* WAC 296-20-19000; *see also Tomlinson v. Puget Sound Freight Lines, Inc.*, 166 Wn.2d 105, 111, 206 P.3d 657 (2009). Second, establishing MMI terminates the responsibility of the self-insured employer or department to provide ongoing medical expenses. *See Shafer v. Dep't of Labor & Indus.*, 166 Wn.2d 710, 716-17, 213 P.3d 591 (2009) (closure of claim proper when injured worker's condition has become fixed and stable).

By establishing an impairment as fixed and stable, a finding of maximum medical improvement serves a critical role in determining the relative rights and remedies available under the IIA, facilitating the "compromise" reflected in that unique statutory scheme.

The restrictive limitation on the definition of "proper and necessary" medical care set forth in the IIA regulation (WAC 296-20-01002) is not present in the statutes or regulation governing PIP coverage here. WAC 284-30-395(1) provides that an insurer may deny, limit, or terminate benefits if it determines medical services are not reasonable or necessary, *without* limiting the meaning of reasonable or necessary to services "essential in achieving maximum medical improvement." Dkt. #32, Ex. N at 7 of 24.

The failure to narrow "reasonable" or "necessary" services underscores that the OIC's regulation did not adopt the IIA's restrictive definition of "proper and reasonable" medical services.

Further, maximum medical improvement in workers' compensation under state law is closely related to the concept of "cure" in the "maintenance and cure" doctrine applicable to injured seamen under federal maritime law. *See Miller v. Arctic Alaska Fisheries Corp.*, 133 Wn.2d 250, 268, 944 P.2d 1005 (1997) (recognizing that "[m]aintenance and cure is the maritime analog to land-based industrial insurance paying an injured seaman's medical expenses (cure) and compensation in lieu of wages (maintenance) for injuries incurred in service of a ship"); *see also Dean v. Fishing Co. of Alaska*, 177 Wn.2d 399, 406, 300 P.3d 815 (2013) (noting that a shipowner's duty to pay maintenance and cure continues until the seaman reaches the point of maximum medical recovery). State Farm agrees that the "maximum medical cure" standard in maritime law is the equivalent of "MMI," and states that "[u]nder the 'maximum medical cure' standard, a ship owner's obligation to pay an injured seaman's medical bills ends when he or she has reached a point where 'future treatment *will merely relieve pain and suffering but not otherwise improve the seaman's physical condition.*'" Def.'s Resp. Br. at 34-35 (quoting *Lee v. Metson Marine Servs., Inc.*, 2012 WL 5381803, at *2 (D. Haw. Oct. 31, 2012) (court order) (emphasis added)). But State Farm points to nothing in Washington's PIP statutes and regulations, or the underlying public policy, that suggests that required payment for medical services will *not* include treatment that "'will merely

relieve pain and suffering but not otherwise improve [a patient's] physical condition.'"
*Id.* at 35 (quoting *Lee*, 2012 WL 5381803, at *2).

In sum, State Farm's analogizing to workers' compensation and maritime law is unconvincing. For the reasons discussed above, State Farm's use of the term "MMI" is not consistent with the common meaning of "reasonable" and "necessary" as those terms appear in WAC 284-30-395(1), and we answer the second certified question no.[6]

## CONCLUSION

We answer the first certified question yes. An insurer violates WAC 284-30-395(1)(a) or (b) if that insurer denies, limits, or terminates an insured's medical or hospital benefits claim based on a finding of "MMI."

We answer the second certified question as follows: under the circumstances of this case, the term "MMI" is not consistent with the terms "reasonable" or "necessary" as those terms appear in WAC 284-30-395(1).

---

[6] Regarding the second certified question, the OIC amicus brief offers a "qualified yes," noting that the terms "reasonable" and "necessary" are not defined in the regulation, and thus "a carrier could potentially use a term such as 'maximum medical improvement' when defining what 'reasonable' and 'necessary' mean under its particular contracts. *However, such definitions cannot add another requirement to the coverage of medical and hospital services that does not already exist in statute or WAC*." OIC Br. at 14, 12-13. The OIC does not clearly articulate what language or conditions might meet these requirements. In any event, "[t]his court will consider certified questions from the federal court 'not in the abstract but based on the certified record provided by the federal court.'" *Brady*, 188 Wn.2d at 579 n.1 (quoting *Carlsen*, 171 Wn.2d at 493). Here, the record shows that State Farm uses the MMI provision as a primary criterion for limiting PIP benefits. So used, the MMI provision violates WAC 284-30-395(1). On that basis, the answer to the second certified question is no.

No. 94771-6

_Madsen, J._

WE CONCUR:

_Fairhurst, C.J._

_Johnson, J._

_Owens, J._

_Stephens, J._

_Wiggins, J._

_González, J._

_Gordon McCloud, J._

_Yu, J._