# FILE

**IN CLERKS OFFICE**
**SUPREME COURT, STATE OF WASHINGTON**

DATE AUG 2 2 2013

CHIEF JUSTICE



This opinion was filed for record
at 8:00 a.m. on Aug. 22, 2013

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>JENNIFER MEGAN MAU,<br><br>Petitioner.<br><br>———————————<br><br>STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>DAVID JOHN EDEN,<br><br>Defendant. | NO. 87697-5<br><br>EN BANC<br><br><br>Filed ____ AUG 2 2 2013 |

GORDON McCLOUD, J.—Jennifer Megan Mau was convicted of making a false claim for payment of a loss under a contract of insurance, in violation of RCW 48.30.230. She challenges the sufficiency of the evidence to support her conviction. RCW 48.30.230(1)(a) criminalizes false claims "for the payment of a

loss under a contract of insurance." In this case, the State failed to prove the existence of any "contract of insurance" underlying Mau's claim; we therefore reverse the conviction.

## FACTS

On March 30, 2007, Mau rented a U-Haul truck from an Olympia U-Haul facility. When she rented the truck, Mau also purchased "Safemove Protection," an optional "cargo protection" policy offered by U-Haul, which does not cover water damage. 1 Report of Proceedings (RP) at 39, 84; Ex. 25. Mau, her partner David Eden, and several friends and family members used the truck to move Mau's and Eden's personal belongings from a rented storage facility in Centralia, Washington, to their new home in Morton, Washington. At some point after Mau returned the truck, she complained to a U-Haul employee that the truck's roof had leaked and that her property had been damaged by rainwater as a result. In response, the employee gave Mau the number of Republic Western Insurance so Mau could file a claim.

Mau called Republic Western on April 3, 2007, to report the alleged damage. Because Mau reported that her items had been damaged by rainwater, Republic Western concluded that her claim would not be covered by the Safemove Protection policy. On April 4, the company sent Mau a letter to this effect. In lieu of a Safemove claim, Republic Western opened a "general liability claim" on Mau's behalf. 1 RP at 37-39.

2

When Mau filed her claim, Republic Western was a wholly owned subsidiary of U-Haul. At trial, a Republic Western employee described the company as the "claims administrator" for "U-Haul who is self-insured." 1 RP at 36. Because it was based in California, Republic Western contracted with independent claims adjusters to investigate claims filed by U-Haul customers in other states. It hired Reilly Gibby, an independent adjustor in Washington, to investigate Mau's claim. Gibby called Mau on April 19, 2007, to discuss her claim, to request documentation of her losses, and to set up an in-person meeting.

Mau met with Gibby the next day at a restaurant about 30 miles from her home. Gibby interviewed Mau about the move, and together they compiled a list of allegedly damaged items totaling more than $16,000 in value. On May 7, Gibby met with Eden, who verified Mau's claims. Because of inconsistencies between Mau's and Eden's accounts of the move, their refusal to meet with Gibby at their home, and their failure to provide any documentation of the alleged damage, Gibby grew to suspect fraud. Eventually, he recommended that Republic Western deny the claim. Roughly two years later, the Washington State Office of the Insurance Commissioner opened an investigation into Mau's and Eden's claim.

On March 17, 2010, the Lewis County prosecutor charged Mau and Eden with one count each of making a false insurance claim. That crime is defined in RCW 48.30.230, which provides, in relevant part:

**False claims or proof—Penalty.**

(1) It is unlawful for any person, knowing it to be such, to:

3

(a) Present, or cause to be presented, a false or fraudulent claim, or any proof in support of such a claim, for the payment of a loss under a contract of insurance; or

(b) Prepare, make, or subscribe any false or fraudulent account, certificate, affidavit, or proof of loss, or other document or writing, with intent that it be presented or used in support of such a claim.

Mau and Eden were not joined as codefendants, but their cases were joined and consolidated for trial.

After the State rested, the defense moved to dismiss on the ground that the State had failed to prove that the defendants made their claim "under a contract of insurance." 2 RP at 207-09. Mau's attorney argued that the false claims statute was "designed to deal with people who take out an insurance policy and then make a fraudulent claim . . . *on the contract of insurance that they took out*" and that the statute was therefore inapplicable to the defendants' "liability claim." 2 RP at 208 (emphasis added). He also argued that because "U-Haul is apparently self-insured," Republic Western could have "handl(ed) this claim for U-Haul" but could not have "act(ed) as an insurance company under some sort of contract of insurance." 2 RP at 208-09. The court denied the motion to dismiss; it reasoned that the defense's argument was based on "too narrow a reading of [the false claims] statute." 2 RP at 210.[1]

---

[1] The trial judge reasoned that "an insurance policy can be direct coverage, [or] it can cover third parties. This was an insurance claim. I don't think that the language of this statute would preclude this type of a claim being a claim for insurance. . . . I think that is too narrow of a reading of [the] statute . . . ." 2 RP at 210.

4

The jury found Mau and Eden guilty as charged. Eden was sentenced to 15 days with allowance that it be served at home. Mau was sentenced to 60 days with allowance that it be served on electronic home monitoring.

Mau and Eden appealed their convictions, and the Court of Appeals affirmed. *State v. Mau,* noted at 169 Wn. App. 1002, 2012 WL 2499372. Mau alone petitioned for review, which this court granted. *State v. Mau,* 176 Wn.2d 1007, 297 P.3d 68 (2013).

## ANALYSIS

In a criminal trial, the due process clauses of the state and federal constitutions require the State to prove each element of the crime charged beyond a reasonable doubt. *State v. Baeza,* 100 Wn.2d 487, 488, 670 P.2d 646 (1983) (citing *Jackson v. Virginia,* 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). Mau argues that the State's evidence is insufficient to sustain her conviction because it does not prove that she filed her claim "under a contract of insurance" as that phrase is used in the false claims statute.[2] Her appeal thus presents questions of both evidentiary sufficiency and statutory interpretation.

In order to determine whether a conviction was based on sufficient evidence, the reviewing court views the evidence in the light most favorable to the prosecution. *Baeza,* 100 Wn.2d at 488 (citing *State v. Green,* 94 Wn.2d 216, 616

---

[2] She also notes that by invoking the false claims statute the State was able to charge her with a class C felony, whereas it would have been limited to a gross misdemeanor charge if it had characterized her unsuccessful claim as attempted theft.

P.2d 628 (1980)). Interpretation of a statute is question of law reviewed de novo. *State v. Engel,* 166 Wn.2d 572, 576, 210 P.3d 1007 (2009).

The plain language of RCW 48.30.230(1)(a) criminalizes only false claims "for the payment of a loss under a contract of insurance." The existence of an underlying contract of insurance is therefore a prerequisite to conviction under the statute. At trial, the State advanced two different theories upon which Mau's conviction could rest. According to one theory, which the State articulated early in its closing argument, Mau filed her claim for payment under the "Safemove" policy. According to the other theory, which the State raised only in its rebuttal closing argument, Mau filed her claim for payment under U-Haul's contract with Republic Western.

At the Court of Appeals, the State advanced only the latter theory. It did not assert that Mau filed her claim under the "Safemove" policy, nor did it assert that U-Haul was contractually obligated to Mau to cover her losses. Rather, it argued that U-Haul had a "contract of insurance" with Republic Western, and that Mau filed her claim for payment under this contract. The Court of Appeals agreed, affirming Mau's conviction on the grounds that "Mau did not have to be a party to the insurance contract . . . to be convicted under the statute . . . [the] contract existed between U-Haul and Republic . . . ." *Mau,* 2012 WL 2499372, at *3.[3]

---

[3] Because we conclude that the State failed to prove the existence of an underlying "contract of insurance" in this case, we do not reach the question whether contractual privity is an element of the false claims crime under RCW 48.30.230. The statute is silent on this question, but we note that it describes potential false claimants in broad terms, as "any person" who presents a fraudulent claim. RCW 48.30.230(1)(a). A

At trial, the State did not elaborate its theory that U-Haul's contract with its subsidiary, Republic Western, constituted a "contract of insurance." Consequently, it is not clear what the jury understood this to mean. It might have thought that U-Haul's contract for claims adjustment constituted a "contract of insurance," but it also might have thought that U-Haul's self-insurance (which Republic Western administers) constituted such a contract. The Court of Appeals' opinion is ambiguous on this question, appearing to conflate Republic's administrative functions with an obligation to cover losses:

> Republic [Western] is the insurance carrier for and a subsidiary of U-Haul. Republic investigates claims for U-Haul and then determines each claim's validity. This relationship is sufficient to demonstrate that an insurance contract existed between U-Haul and Republic: If Republic determines that a claim is valid, it pays the claimant for his or her loss.[4]

*Id.*

---

majority of courts addressing similar statutes in other jurisdictions have interpreted such broad language as evidence that the legislature intended to criminalize false insurance claims by third parties, as well as by actual policyholders. *See State v. Mark Marks, PA*, 698 So. 2d 533 (Fla. 1997); *Kiddie v. State*, 1977 OK CR 301, 574 P.2d 1042, 1047; *People v. Benson*, 206 Cal. App. 2d 519, 23 Cal. Rptr. 908 (1962). *But see People v. Learman*, 281 A.D. 583, 586-87, 121 N.Y.S.2d 388 (1953) (concluding that there was insufficient evidence that the defendant had actually falsified the vehicle appraisal at issue, but going on to find that, even if he had, this falsification fell outside the reach of the false claims statute because it was in the service of a tort action rather than "a claim for a loss upon any contract of insurance").

[4] To the extent that this portion of the Court of Appeals opinion implies that Republic Western (as opposed to U-Haul) covers U-Haul customer losses, it is not consistent with the evidence established at Mau's trial. At the trial, a claims adjustor for Republic Western testified that any claims approved by Republic Western would "affect U-Haul's bottom line." 1 RP at 49.

7

In its arguments to this court, the State conceded[5] that neither the Safemove policy nor U-Haul's self-insurance was the contract underlying Mau's prosecution.[6] We therefore address only the argument that the State advances here:

---

[5] Wash. Supreme Court oral argument, *State v. Mau*, No. 87697-5 (May 9, 2013), at 16 min., 50 sec., *audio recording by* TVW, Washington State's Public Affairs Network, available at http://www.tvw.org.

[6] With respect to the self-insurance, this concession is well taken. In *Kyrkos v. State Farm Mutual Auto Insurance*, 121 Wn.2d 669, 852 P.2d 1078 (1993), this court held that the definition of "insurance" in Title 48 RCW excluded "self-insurance":

> [A] broad understanding of the term "insurance policy" so as to include self-insurance . . . is specifically foreclosed by RCW Title 48, which defines "insurance" as a "contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies."

*Id.* at 674 (citing RCW 48.01.040). We reaffirmed this reasoning in *Stamp v. Department of Labor & Industries*, 122 Wn.2d 536, 543 n.6, 859 P.2d 597 (1993). While this court has never addressed the question, courts in several other jurisdictions have held that "self-insurance" is "insurance" where it involves the transfer of risk to a group. *See, e.g., Associated Indus. of Ky. v. U.S. Liab. Ins. Grp.*, 531 F.3d 462, 467 (6th Cir. 2008) (group self-insurance was "insurance because it involved risk shifting from the participants to the fund"); *Mass. Care Self-Ins. Grp., Inc. v. Mass. Ins. Insolvency Fund*, 458 Mass. 268, 279, 937 N.E.2d 939 (2010) (workers' compensation self-insurance group "provides its members with the same product sold by the workers' compensation insurance industry"); *La. Safety Ass'n of Timbermen-Self Ins. Fund v. La. Ins. Guar. Ass'n*, 2009-0023 (La. 6/29/09), 17 So. 3d 350, 358 ("the [group] was an insurer [because it] . . . undertook to indemnify its members for the full amount of workers' compensation claims allowed . . . and the members agreed to pay premiums and assessments") (footnote omitted); *S.C. Prop. & Cas. Ins. Guar. Ass'n v. Carolinas Roofing & Sheet Metal Contractors Self-Ins. Fund*, 315 S.C. 555, 446 S.E.2d 422, 425 (1994) (distinguishing "single employer self-insured" from "the members of a group self-insurer . . . [who] *transfer* a portion of their risk to the group" (emphasis in original)). *Kyrkos* does not foreclose such a holding, but it does establish the following rule: absent legislation to the contrary, self-insurance is not "insurance" unless it involves one party's contract "'to indemnify another or pay a specified amount upon determinable contingencies.'" *Kyrkos*, 121 Wn.2d at 674 (quoting RCW 48.01.040). In Mau's case, the prosecution presented no evidence that U-Haul's self-insurance involved any sort of group risk-share. Thus, even under the narrowest reading of *Kyrkos*, there was insufficient evidence that U-Haul's self-insurance met the definition of a "contract of insurance" for purposes of the false claims statute.

that the claims administration contract between U-Haul and Republic Western constitutes a "contract of insurance" for purposes of the false claims statute.

This argument is unavailing. Title 48 RCW, which governs insurance in Washington State and contains the false claims statute, does not define a "contract of insurance." It does define "insurance," however, as "a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies." RCW 48.01.040. Read in combination with the definition of "insurance," therefore, the phrase "contract of insurance" is somewhat perplexing: it literally means a "contract of a contract . . . ." Nevertheless, the phrase, "contract of insurance" appears numerous times throughout Washington's Insurance Code, in contexts that belie the State's broad interpretation.

As just one example, the phrase, "contract of insurance" appears 14 times in chapter 48.18 RCW, which governs "The Insurance Contract." In every instance, the phrase is used as a synonym for "insurance." *See, e.g.*, RCW 48.18.140(1) ("The written instrument, in which a contract of insurance is set forth, is the

---

It is a closer question whether the Safemove policy could have been the "contract of insurance" underlying Mau's allegedly false claim. The State charged Mau with filing a claim for over $16,000—an amount that elevated the charge to a class C felony, RCW 48.30.230, and was not determined until *after* Republic Western denied coverage under the "Safemove" policy and opened a "general liability claim" instead, 1 RP at 45-46, 64-69. Moreover, U-Haul's contract with Mau studiously avoids referring to the policy as "insurance," instead referring to it as "protection." Ex. 25. This renders the provisions addressing that "protection" ambiguous at best. Their plain language indicates that U-Haul is trying to prevent "Safemove's" characterization as "insurance," but in substance the policy might fit Title 48 RCW's definition of "insurance" as "a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies." RCW 48.01.040.

9

policy."); RCW 48.18.040(1) ("No contract of insurance on property or of any interest therein or arising therefrom shall be enforceable except for the benefit of persons having an insurable interest in the things insured."); RCW 48.18.190 ("No agreement in conflict with, modifying, or extending any contract of insurance shall be valid unless in writing and made a part of the policy.").[7] Indeed, this court can find no Washington case or statute in which the phrase "contract of insurance" denotes a broader category of contract than that transferring risk from insured to insurer. There is apparently no support for the State's argument that a contract for claims administration is a "contract of insurance" under the false claims statute.

Because the claims administration contract between U-Haul and Republic Western is not a "contract of insurance" for purposes of the false claims statute, the evidence is insufficient to show that Mau filed her claim for payment under a "contract of insurance." The State has not met its burden to prove every element of the crime charged. We therefore reverse the Court of Appeals and remand for dismissal Mau's conviction.

---

[7] The phrase appears seven times throughout RCW 48.18.2901 and RCW 48.18.292, which describe the insurer's duty to "renew" various "contracts of insurance," three times in RCW 48.18.291, which prohibits insurers from canceling a "contract of insurance predicated . . . upon the use of a private passenger automobile" (RCW 48.18.2901(1)) without notice, and once in RCW 48.18.299, which prohibits an insurer from terminating a "contract of [disability] insurance."

Gordon McCloud, J.

WE CONCUR:

Result Only
Madsen, C.J.

Owens, J.

Fairhurst, J.

Wiggins, J.

No. 87697-5

GONZÁLEZ, J. (dissenting) —The State charged Jennifer Mau with making a false claim of loss under a contract of insurance after she claimed that monsoon rains on a nearly rainless day had seeped through her rented U-Haul truck and damaged her property. Ample evidence supports the jury's guilty verdict. I respectfully dissent.

It is a crime in our State

> for any person, knowing it to be such, to:
>
> > (a) Present, or cause to be presented, a false or fraudulent claim, or any proof in support of such a claim, for the payment of a loss under a contract of insurance; or
> >
> > (b) Prepare, make, or subscribe any false or fraudulent account, certificate, affidavit, or proof of loss, or other document or writing, with intent that it be presented or used in support of such a claim.

RCW 48.30.230(1). The majority closely examines whether the State proved that the specific contract between U-Haul and the Republic Western was a contract of insurance under relevant statutes and regulations. Not surprisingly, as the contract is not in the record, the majority concludes that it had not.

But our role here is to decide whether *Mau* has established that there was not sufficient evidence presented to sustain the jury's verdict. "A sufficiency challenge admits the truth of the State's evidence and accepts the reasonable inferences to be made from it." *State v. O'Neal,* 159 Wn.2d 500, 505, 150 P.3d 1121 (2007) (citing *State v. Salinas,* 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). Evidence is sufficient if any rational jury could have found the element in question. *State v. Eckenrode,* 159 Wn.2d 488, 494, 150 P.3d 1116 (2007) (citing *Salinas,* 119 Wn.2d at 201). Circumstantial evidence may support a verdict. *Eckenrode,* 159 Wn.2d at 495 (citing *Rogers Potato Serv., LLC v. Countrywide Potato, LLC,* 152 Wn.2d 387, 392, 97 P.3d 745 (2004)). In fact, pattern jury instruction 5.01 given in this case told the jury that evidence may be direct or circumstantial and that "[o]ne is not necessarily more or less valuable than the other." Clerk's Papers at 42; 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 5.01, at 170 (2008).

Here, there is ample circumstantial evidence that Mau presented a false claim of loss under a contract of insurance. The State presented testimony from the claims adjustor, Michael Larson, who handled Mau's claim. Larson testified, among other things, that he worked for "Republic Western *Insurance* Company" and that his company "handles claims for U-Haul who is self-insured." 1 Report of Proceedings (RP) (Sept. 22, 2010) at 36 (emphasis added). He testified he was a special investigator, whose job it was "[t]o investigate questionable *claims*." *Id.* at 37

2

*State v. Mau*, No. 87697-5 (González, J. dissenting)

(emphasis added). He testified that based on Mau's report, he had "open[ed] up a *general liability claim*" and that if the facts alleged had been proved, he would have treated it as a "*general liability claim*" and paid for the loss. *Id.* at 39 (emphasis added). Mau herself testified that she was called by "the *insurance* adjustor" who "needed to meet with me to discuss this *insurance claim.*" 2 RP (Sept. 23, 2010) at 285. Words like "insurance," "claim," and "general liability" are all strongly associated with insurance contracts. This alone was sufficient for a rational jury to find Mau submitted a false claim under a contract of insurance.

Further, I am not as sanguine as the majority that the State properly conceded that the Safemove policy would not qualify as a contract of insurance under this statute. The State asked Larson, "When someone rents a U-Haul from a U-Haul facility, what type of insurance do they have on that?" 1 RP (Sept. 22, 2010) at 38. He responded that

> U-Haul is self-insured. There's typically two types of claims that we see. General liablity claims would be claims where if there was a defect and it would fall under a general liability. The other applicable coverage would be safe move protection is what we like to call it. It's a coverage, it's not like an insurance, but it's a coverage and it would cover the cargo in the even[t] of an accident.

*Id.* at 38-39. The jury was also given the original Safemove contract Mau signed. Ex. 25. That contract says specifically:

3

SAFEMOVE BENEFITS INCLUDE:

DAMAGE WAIVER PROTECTION – relieves you of financial responsibility for damage to U-Haul equipment.

CARGO PROTECTION – coverage for your possessions.

MEDICAL AND LIFE PROTECTION – coverage for you and your passengers.

*Id.* The record supports the conclusion that Mau made a claim under this contract. 1 RP (Sept. 22, 2010) at 38. Again, "coverage," "protection," "benefits," and "waiver" are all language from which a rational jury could conclude a contract of insurance existed.

I respectfully dissent.

*State v. Mau*, No. 87697-5 (González, J. dissenting)

_____

González, J.

Stephens, J.