# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of | No. 53802-4-II |
| ANDRES SEBASTIAN FERRER, | |
| Petitioner. | UNPUBLISHED OPINION |

MAXA, J. – In this personal restraint petition (PRP), Andres Ferrer seeks relief from personal restraint imposed following his convictions of second degree assault and felony harassment for assaulting his former wife while her three minor children were present. He challenges both his assault conviction and his exceptional sentence based on the aggravating factor that the offense was committed within the sight and sound of the victim's minor children.

We hold that (1) Ferrer's argument that the trial court's disfigurement instruction violated various constitutional provisions because the definition of disfigurement was based on racist and sexist stereotypes has no merit, (2) the disfigurement instruction was not an improper judicial comment on the evidence, (3) Ferrer did not receive ineffective assistance of counsel when appellate counsel failed to challenge the constitutionality of the disfigurement instruction, (4) the trial court did not engage in impermissible judicial fact finding when it determined that there were substantial and compelling reasons to impose an exceptional sentence based on the jury's finding of an aggravating factor or when he noted that three minor children were present at the time of the assault, and (5) Ferrer did not receive ineffective assistance of counsel when trial counsel failed to challenge the constitutionality of the exceptional sentencing process.

Accordingly, we deny Ferrer's PRP.

FACTS

*Background*

This case arises from Ferrer's assault of his former wife Kristina Ferrer. Ferrer repeatedly punched Kristina[1] in the head and face on her bed while their two young daughters also were on the bed. Kristina's minor daughter from a previous marriage, ARC, was present in the house while the assault occurred and called 911.

The State charged Ferrer with second degree assault and felony harassment, each with a domestic violence aggravator based in part on the fact that Kristina's three minor children were present during the assault.

*Trial and Jury Instructions*

At trial, Kristina and other witnesses testified that she suffered bruising on the side of her head, ear, neck, and shoulder as a result of the assault. The bruising did not fade for three or four weeks. One officer testified that the bruising was unusual and that she rarely had seen bruising so severe after an assault of this type. Another officer testified that he had never seen marks like Kristina exhibited. Numerous photographs of Kristina's injuries were admitted into evidence.

Kristina, ARC, and Ferrer all testified that three minor children were present at the time of the assault.

The to-convict jury instruction for second degree assault provided that the State had to prove that Ferrer assaulted Kristina and "thereby recklessly inflicted substantial bodily harm" or

---

[1] This opinion will refer to Kristina by her first name to distinguish her from Ferrer. No disrespect is intended.

"assaulted Kristina[] by strangulation." Exs.-Trs. at 802 (Instr. 7) (pdf pagination).[2] The trial court defined "substantial bodily harm" to include a "temporary but substantial disfigurement." Exs.-Trs. at 804 (Instr. 9) (pdf pagination).

The trial court gave an instruction defining "disfigurement":

"Disfigurement" means that which impairs or injures the beauty, symmetry, or appearance of a person or thing; that which renders unsightly, misshapen, or imperfect, or deforms in some manner.

Exs.-Trs. at 805 (Instr. 10) (pdf pagination). Ferrer objected to the disfigurement instruction.

The jury instruction for aggravated domestic violence offense provided in part,

To find that this crime is an aggravated domestic violence offense, each of the following two elements must be proved beyond a reasonable doubt:

(1) That the victim and the defendant were family or household members; and

(2) That the offense was committed within the sight or sound of the victim's or defendant's child who was under the age of 18 years.

Exs.-Trs. at 822 (Instr. 27) (pdf pagination).

The jury convicted Ferrer of second degree assault and felony harassment. By special verdicts, the jury found that Ferrer had inflicted substantial bodily harm, but not assault by strangulation. The jury also found by special verdicts that both crimes were aggravated domestic violence offenses.

*Sentencing*

At sentencing, the trial court determined that Ferrer's standard range sentence ranges were 12 to 14 months for second degree assault and four to 12 months for felony harassment.

---

[2] Because some documents are paginated and others are not, we use the pdf pagination in citations.

The trial court also determined that there were substantial and compelling reasons to impose an exceptional sentence based on ARC's, Kristina's, and Ferrer's testimony and the aggravating factors that were found by the jury. While discussing the jury's aggravating factors finding, the court stated that "there were three minor children present at the time of this attack." Exs.-Trs. at 939 (pdf pagination). The court entered two findings of fact:

> I. The exceptional sentence is justified by the following aggravating circumstances: (a) Each current offense involved domestic violence, as defined in RCW 10.99.020, and each current offense occurred within the sight or sound of the victim's minor children under the age of eighteen years under RCW 9.94A.535(3)(h).
> . . . .
>
> II. The court finds that an exceptional sentence is supported by the testimony of Kristina[] and [ARC] and further, that the jury found both offenses to be aggravated domestic violence offenses pursuant to RCW 9.94A.535(3)(h)(ii).

Clerk's Papers (CP)[3] at 235. The court attached a copy of the jury's special verdict forms finding that Ferrer's crimes were an aggravated domestic violence offense to its findings of fact and conclusions of law.

The trial court adopted the State's recommended sentence of 50 months for second degree assault and 12 months for felony harassment, with both sentences running concurrently. Ferrer's second degree assault exceptional sentence included the standard sentence of 14 months plus 12 months for each of Kristina's three children present during the assault – a total of an additional 36 months above the standard range sentence.

Ferrer appealed his convictions and sentence. This court affirmed Ferrer's convictions on direct appeal. The Supreme Court remanded for this court to consider Ferrer's jury instruction arguments.

---

[3] The document we are referring to as clerk's papers is labeled as "petitioner's brief" dated September 16, 2019 in the file at the Court of Appeals, although it is an untitled collection of court documents related to this case, not a brief.

This court concluded on remand that the trial court erred when it failed to provide a definition of "substantial" in the term "substantial bodily injury" in its jury instructions, but held that the error was harmless. *State v. Ferrer*, No. 47687-8-II, slip op. at 2 (Wash. Ct. App. Oct. 9, 2018), https://www.courts.wa.gov/opinions/pdf/D2%2047687-8-II%20Unpublished%20Opinion.pdf. The court stated, "Having reviewed the photographs of Kristina's injuries that were admitted into evidence and also having reviewed the testimony describing her injuries, we hold that the only conclusion a rational jury could have reached was that the injuries were a temporary but substantial disfigurement given the severity of the bruising." *Id.* at 9. Accordingly, this court affirmed Ferrer's conviction for second degree assault. *Id.* at 10.

*CrR 7.8 Motion*

In March 2019, Ferrer filed a CrR 7.8 motion in Clark County Superior Court. In his motion, he asserted a constitutional challenge to the disfigurement jury instruction and raised a constitutional challenge to his exceptional sentence. The trial court transferred the CrR 7.8 motion to this court for consideration as a PRP, and this court accepted the transfer.

ANALYSIS

A.    PRP PRINCIPLES

We will grant appropriate relief when petitioners establish that they are under restraint that is unlawful for one of certain specified reasons. RAP 16.4(a)-(c). However, a PRP is not a substitute for a direct appeal, and the availability of collateral relief is limited. *In re Pers. Restraint of Dove*, 196 Wn. App. 148, 153, 381 P.3d 1280 (2016). " 'Relief by way of a collateral challenge to a conviction is extraordinary, and the petitioner must meet a high standard

before this court will disturb an otherwise settled judgment.' " *Id.* (quoting *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 132, 267 P.3d 324 (2011)).

To prevail in a PRP, a petitioner must establish by a preponderance of the evidence (1) a constitutional error that resulted in actual and substantial prejudice or (2) a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice. *In re Pers. Restraint of Meredith*, 191 Wn.2d 300, 306, 422 P.3d 458 (2018). Establishing "actual and substantial prejudice" means more than merely showing the possibility of prejudice; the petitioner must establish that if the alleged error had not occurred, the outcome more likely than not would have been different. *In re Pers. Restraint of Meippen*, 193 Wn.2d 310, 315-16, 440 P.3d 978 (2019).

RAP 16.7(a)(2) requires a petitioner to specifically identify the evidence available to support the factual allegations in the PRP. *In re Pers. Restraint of Wolf*, 196 Wn. App. 496, 503, 384 P.3d 591 (2016). The petitioner must show that he has competent, admissible evidence to establish facts that would entitle him to relief. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 18, 296 P.3d 872 (2013). Conclusory allegations are insufficient. *Wolf*, 196 Wn. App. at 503. In addition, the factual allegations must be based on more than speculation and conjecture. *Yates*, 177 Wn.2d at 18.

B.      DISFIGUREMENT INSTRUCTION

Ferrer argues that the trial court erred by giving an instruction that defined "disfigurement" (1) using racist and sexist stereotypes in violation of his constitutional rights and (2) was an inappropriate judicial comment on the evidence. This argument is incorrect.[4]

---

[4] Initially, the State argues that Ferrer is precluded from asserting his challenge to the disfigurement instruction because this court already ruled on a similar argument in his direct appeal. But in Ferrer's direct appeal, this court addressed only the trial court's failure to give an

1. Legal Principles

Jury instructions are sufficient if, viewed as a whole, they properly state the law and allow the parties to argue their theories of the case. *State v. Wilson*, 10 Wn. App. 2d 719, 727, 450 P.3d 187 (2019). In general, we review for abuse of discretion a trial court's decisions regarding jury instructions. *Id.* However, we review de novo whether an instruction violates the constitution. *State v. Mansour*, 14 Wn. App. 2d 323, 329, 470 P.3d 543 (2020), *review denied,* 196 Wn.2d 1040 (2021).

A person commits second degree assault if he or she "[i]ntentionally assaults another and thereby recklessly inflicts *substantial bodily harm*." RCW 9A.36.021(1)(a) (emphasis added). "Substantial bodily harm" is defined as "bodily injury which involves a temporary but substantial *disfigurement*, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part." RCW 9A.04.110(4)(b) (emphasis added).

Title 9A of the Criminal Code does not define disfigurement. However, the most recent edition of *Black's Law Dictionary* defines the term as "[a]n impairment or injury to the appearance of a person or thing." BLACK'S LAW DICTIONARY 588 (11th ed. 2019).

In *State v. Atkinson*, the court approved the trial court's disfigurement instruction that was identical to the instruction given here: "that which impairs or injures the beauty, symmetry, or appearance of a person or thing; that which renders unsightly, misshapen, or imperfect, or deforms in some manner." 113 Wn. App. 661, 667, 54 P.3d 702 (2002) (quotation marks omitted). The instruction was based on the definition in an earlier version of *Black's Law*

---

instruction defining "substantial" in the term "substantial bodily injury." Here, he challenges the constitutionality of the disfigurement instruction, an argument we did not address. Therefore, we reject the State's argument.

*Dictionary*. *Atkinson*, 113 Wn. App. at 667. The court noted the then-current definition of disfigurement in *Black's Law Dictionary* and also quoted the dictionary definition of "disfigure": " 'to make less complete, perfect, or beautiful in appearance or character.' " *Id.* at 667-68 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 649 (1993)). The court concluded that the disfigurement instruction was accurate and "merely supplemented and clarified the statutory language." *Id.* at 668. The court determined that the instruction allowed the defendant to present his theory of the case that he was only guilty of fourth degree assault because the disfigurement was not substantial. *Id.*

The comment to the Washington Pattern Jury Instruction definition of "substantial bodily harm" cites *Atkinson* for the proposition that the jury can be instructed on the definition of "disfigurement" used in *Black's Law Dictionary*. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 2.03.01, comment at 40 (5th ed. 2021).

2. Constitutional Arguments

a. Analysis

Ferrer argues that the trial court's disfigurement instruction is improper because it includes the words "beauty," "unsightly," and "imperfect." He claims that because these terms are inherently subjective, they allow the perpetuation of racist and sexist stereotypes, and can lead to discrimination based on race and gender. Ferrer asserts: "Jurors raised in a culture that values white female beauty will more likely find that a particular bruise impairs the beauty of a woman of Western European descent with the stereotypical appearance of a model from *Cosmopolitan* than the situation where a male, from a non-Western European background, receives the same bruise." Pet. at 11.

Although Ferrer argues that we should reject *Atkinson*, he does not argue that the trial court abused its discretion in choosing the language of the disfigurement instruction.[5] Instead, he presents only a constitutional argument. Ferrer vaguely argues that the instruction violates various constitutional rights, including due process, equal protection and jury trial, violates Washington's Equal Rights Amendment,[6] and is unconstitutionally vague.

However, even if Ferrer's premise that this instruction allows the jury to apply its own subjective notions of beauty is true, he provides no cogent explanation of why jurors necessarily would base their verdict on "white female beauty" or evaluate disfigurement differently depending on the race and gender of the victim. A PRP cannot be based on conclusory allegations or speculation and conjecture. *Yates*, 177 Wn.2d at 18; *Wolf*, 196 Wn. App. at 503.

More significantly, Ferrer provides no meaningful argument or analysis regarding how the trial court's disfigurement instruction violates the various constitutional provisions he references. He does not address the requirements for due process, equal protection, or jury trial right violations or the standards for unconstitutional vagueness. He does not explain how the Equal Rights Amendment even applies here. He simply reiterates his theory that the instruction perpetuates racial and gender stereotypes without tethering that theory to any particular constitutional analysis.

We decline to craft constitutional arguments for Ferrer so we can address his claims. "Appellate courts should not be placed in a role of crafting issues for the parties; thus, mere

---

[5] In any event, such an argument would fail here because even if the trial court erred, Ferrer could not show a complete miscarriage of justice as required to prevail on his PRP. *See Meredith*, 191 Wn.2d at 306.

[6] Article XXXI, section I of the Washington Constitution. That provision states, "Equality of rights and responsibility under the law shall not be denied or abridged on account of sex." Art. XXXI, sec. I.

'naked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.' " *In re Pers. Restraint of Rhem*, 188 Wn.2d 321, 328, 394 P.3d 367 (2017) (quoting *In re Pers. Restraint of Williams*, 111 Wn.2d 353, 365, 759 P.2d 436 (1988) (internal quotation marks omitted). Therefore, we reject Ferrer's contentions that the trial court's disfigurement instruction violated various constitutional provisions.

> b.    Actual and Substantial Prejudice

Even if the trial court's disfigurement instruction violated the constitution, Ferrer still must show that he suffered actual and substantial prejudice to prevail on his PRP. *Meredith*, 191 Wn.2d at 306. Ferrer briefly argues that the disfigurement instruction prejudiced him. This argument is incorrect.

Here, it is undisputed that Kristina suffered very significant bruising on the side of her head, ear, neck, and shoulder as a result of the assault. The bruising remained visible for three to four weeks. One officer testified that the bruising was unusual and that she had rarely seen bruising so severe after an assault of this type. Another officer testified that he had never seen marks like Kristina exhibited. The photographs of Kristina's injuries that were admitted into evidence documented her significant bruising.

In *Ferrer*, this court reviewed the evidence in the record and concluded that "the only conclusion a rational jury could have reached was that [Kristina's] injuries were a temporary but substantial disfigurement given the severity of the bruising." No. 47687-8-II, slip op. at 9.

Given the evidence in the record, Ferrer cannot show that the outcome of his trial more likely than not would have been different if the terms "beauty," "unsightly," and "imperfect" had been removed from the disfigurement instruction. *See Meippen*, 193 Wn.2d at 315-16. The

evidence was overwhelming that Kristina suffered substantial disfigurement. Therefore, we conclude that Ferrer cannot establish actual and substantial prejudice.

> 3. Judicial Comment on the Evidence

Ferrer argues that the trial court's disfigurement instruction constituted an unconstitutional comment on the evidence. This argument is incorrect.

Article IV, section 16 of the Washington Constitution provides, "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." This provision prohibits judges from conveying their personal opinions on the merits of the case to the jury. *State v. Higgins*, 168 Wn. App. 845, 859, 278 P.3d 693 (2012). A jury instruction that merely states the law accurately is not considered an improper comment on the evidence. *State v. Sandoval*, 8 Wn. App. 2d 267, 277, 438 P.3d 165, *review denied,* 193 Wn.2d 1028 (2019). However, the trial court improperly comments on the evidence when "a definitional jury instruction . . . 'essentially resolve[s] a contested factual issue.' " *Id.* (alterations in original) (quoting *State v. Brush*, 183 Wn.2d 550, 557, 353 P.3d 213 (2015).

As stated above, the court in *Atkinson* approved of the definition of disfigurement the trial court used in the disfigurement instruction and rejected the claim that the definition is overly broad, misstated the law, and misled the jury. 113 Wn. App. at 667-68. We agree with the analysis in *Atkinson* that the disfigurement instruction was an accurate statement of the law and merely supplemented the language of RCW 9A.04.110(4)(b). *Id.* at 668. Therefore, the trial court's disfigurement here was not an improper comment on the evidence.[7]

---

[7] Although we conclude that the trial court's disfigurement instruction was an accurate statement of the law, we acknowledge that inclusion of the term "beauty" may not be preferable. Trial courts in the exercise of discretion may want to consider whether that term should be omitted from the disfigurement instruction approved in *Atkinson*.

Ferrer relies on *State v. Dolan*, 118 Wn. App. 323, 73 P.3d 1011 (2003). In that case, the victim sustained bruising to his throat and the defendant was charged with second degree assault of a child. *Id.* at 325-26. The trial court gave the following instruction: "The presence of bruising and swelling can be sufficient evidence of substantial bodily harm. The bruising and swelling can constitute temporary but substantial disfigurement." *Id.* at 331. The appellate court held that this instruction was improper, in part because "it improperly commented that evidence showing bruising and swelling also shows substantial bodily harm." *Id.* at 332 (footnote omitted).

But the trial court's disfigurement instruction here merely provided a definition of disfigurement, which did mention bruising. And unlike in *Dolan*, the instruction did not tell the jury that bruising constituted substantial disfigurement.

We conclude that the disfigurement instruction did not constitute an improper judicial comment on the evidence.

4. Ineffective Assistance of Appellate Counsel

Ferrer argues that his appellate counsel was ineffective for failing to raise constitutional challenges to the disfigurement instruction on direct appeal. This argument is incorrect.

To succeed on an ineffective assistance of appellate counsel claim, a petitioner bears the burden to show that (1) his appellate counsel's performance was deficient and (2) the deficient performance prejudiced the petitioner. *In re Pers. Restraint of Salinas*, 189 Wn.2d 747, 759, 408 P.3d 344 (2018). The petitioner also must show that the legal issue that the appellate counsel did not raise had merit and that he or she actually was prejudiced. *Id.* at 760. The failure to raise all possible nonfrivolous issues on appeal does not constitute ineffective assistance of appellate counsel. *Meredith*, 191 Wn.2d at 312.

As discussed above, Ferrer fails to show that his constitutional challenges to the trial court's disfigurement instruction have merit or that he suffered prejudice. As a result, Ferrer cannot show that his appellate counsel was deficient in not making the challenges or that the result would have been any different in his first two appeals if his appellate counsel had asserted the same grounds raised here. Therefore, we reject Ferrer's argument.

C.     EXCEPTIONAL SENTENCING PROCESS

Ferrer challenges the constitutionality of the sentencing scheme for exceptional sentences and argues that the trial court's decision to impose an exceptional sentence violated his rights to a jury trial and due process because (1) only a jury can determine if there are "substantial and compelling" reasons to support an exceptionally long sentence and (2) the trial court actually engaged in impermissible judicial fact finding here. This argument is incorrect.

1.     Legal Principles

A criminal defendant has the right of trial by jury under the Sixth Amendment to the United States Constitution and article I, sections 21 and 22 of the Washington Constitution. The right to a jury trial, along with the right to due process under the state and federal constitutions, requires that each element of the crime be proven to the jury beyond a reasonable doubt. *State v. Mau*, 178 Wn.2d 308, 312, 308 P.3d 629 (2013) (due process); *State v. Harris*, 199 Wn. App. 137, 147, 398 P.3d 1229 (2017) (jury trial). In *Blakely v. Washington*, the United States Supreme Court held that any fact that allows the imposition of a sentence above the standard range, other than prior convictions, must be found by a jury beyond a reasonable doubt. 542 U.S. 296, 301, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)).

The imposition of an exceptional sentence is a two-step process directed by statute. *See State v. Sage*, 1 Wn. App. 2d 685, 709-10, 407 P.3d 359 (2017). First, the jury must make a factual determination beyond a reasonable doubt that aggravating circumstances exist. RCW 9.94A.537(3). Aggravating circumstances that must be found by a jury are listed in RCW 9.94A.535(3)[8], and include committing a domestic violence offense "within sight or sound of the victim's or the offender's minor children." RCW 9.94A.535(3)(h)(ii).

Second, the trial court may impose an exceptional sentence if, considering the purposes of the Sentencing Reform Act of 1981, chapter 9.94A RCW, the court finds that the jury's finding regarding the aggravating circumstances provides a "substantial and compelling reason[]" justifying an exceptional sentence." RCW 9.94A.535; RCW 9.94A.537(6). If the court concludes that an exceptional sentence is justified, it must enter written findings of fact and conclusions of law. RCW 9.94A.535; *see also State v. Friedlund*, 182 Wn.2d 388, 394-95, 341 P.3d 280 (2015).

The court in *Sage* noted that "[t]he only permissible 'finding of fact' by a sentencing judge on an exceptional sentence is to confirm that the jury has entered by special verdict its finding that an aggravating circumstance has been proven beyond a reasonable doubt." 1 Wn. App. 2d at 709.

2. Constitutionality of Sentencing Scheme for Exceptional Sentences

Ferrer argues that whether there are substantial and compelling reasons to impose an exceptional sentence is a factual finding that must be determined by the jury rather than a legal conclusion that may be determined by the trial court. This argument is incorrect.

---

[8] RCW 9.94A.535 has been amended since the events of this case transpired. Because these amendments are not material to this case, we cite to the current version of RCW 9.94A.535.

Division One of this court rejected a similar argument in *Sage*. 1 Wn. App. at 707-10. In that case, the jury made specific findings in special verdicts that the State had proved the existence of certain aggravating circumstances beyond a reasonable doubt. *Id.* at 709. During sentencing, the trial court relied on the jury's special verdicts and the evidence in support of those special verdicts to conclude that there were substantial and compelling reasons to justify an exceptional sentence. *Id.* at 709-10. The defendant argued that whether an aggravating circumstance is substantial and compelling enough to impose an exceptional sentence necessarily involves factual questions. *Id.* at 708.

The court noted that previous cases have held that the substantial and compelling determination was a legal conclusion. *Id.* The court stated:

> Washington cases recognize that once the jury by special verdict makes the factual determination whether aggravating circumstances have been proved beyond a reasonable doubt, "[t]he trial judge [is] left only with the legal conclusion of whether the facts alleged and found were sufficiently substantial and compelling to warrant an exceptional sentence."

*Id.* (alterations in original) (quoting *State v. Suleiman*, 158 Wn.2d 280, 290-91, 143 P.3d 795 (2006).

The court emphasized that once the trial court confirmed that the jury had found an aggravating circumstance, "[t]hen it is up to the [court] to make the *legal, not factual, determination* whether those aggravating circumstances are sufficiently substantial and compelling to warrant an exceptional sentence." *Id.* at 709 (emphasis added). As a result, the court concluded that "the trial court properly analyzed and articulated the basis for the exceptional sentence without engaging in prohibited fact finding." *Id.* at 710.

Ferrer relies on *Hurst v. Florida*, 577 U.S. 92, 136 S. Ct. 616, 193 L. Ed. 2d 504 (2016). In that case, Florida's sentencing scheme for a defendant convicted of a capital felony required

the sentencing court to conduct a subsequent evidentiary hearing before a jury. *Id.* at 95. The jury provided a recommendation of a life or death sentence without stating the factual basis of its recommendation. *Id.* at 95-96. Although the trial court would consider the jury's recommendation, the court exercised independent judgment to determine whether a death sentence was justified. *Id.* at 96. The Court held that Florida's capital punishment sentencing scheme violated the Sixth Amendment because it directed the trial court to engage in fact finding to determine whether there were sufficient aggravating circumstances in support of a death sentence. *Id.* at 98-99.

However, *Hurst* is distinguishable. Unlike in *Hurst*, under the Washington statutory scheme the jury is not just making a recommendation to the trial court whether an aggravating factor exists. Instead, RCW 9.94A.537(3) clearly provides that the jury first must determine if there is sufficient evidence to prove beyond a reasonable doubt the existence of an aggravating factor. The trial court has no rule in that determination. Only once the jury has made its factual findings can the trial court determine as a matter of law that those findings justify an exceptional sentence. *See Sage*, 1 Wn. App. 2d at 708-09.

In a footnote, the court in *Sage* distinguished *Hurst* on the grounds that Florida's sentencing scheme expressly provided that the jury's sentencing recommendation was advisory, while under the Washington exceptional sentencing procedure "the jury exclusively resolves the factual question whether the aggravating circumstances have been proven beyond a reasonable doubt." *Id.* at 710 n.86.

We reject Ferrer's claim that the statutory sentencing scheme for exceptional sentences is based on improper judicial fact finding.

3.    Trial Court's Fact Finding

In addition to his constitutional challenge, Ferrer also claims that the trial court actually engaged in additional fact finding beyond the aggravated domestic violence offense jury finding in violation of his right to a jury trial and due process.  This argument is incorrect.

Here, the jury found in a special verdict form that Ferrer's second degree assault was an aggravated domestic violence offense.  A jury instruction stated that such an offense was one "committed within the sight or sound of the victim's or defendant's *child* who was under the age of 18 years."  Exs.-Trs. at 822 (Instr. 27) (emphasis added) (pdf pagination).  When discussing the aggravating factor, the trial court stated that that "there were *three* minor children present at the time of this attack."  Exs.-Trs. at 939 (pdf pagination) (emphasis added).  And the court based the length of the exceptional sentence on the fact that three children were present.

Ferrer argues that the trial court's statement that three children were present constituted additional fact finding because the jury only found that one child was present.  However, the terms "child" and "children" are interchangeable in the context of the domestic violence aggravator set forth in RCW 9.94A.535(3)(h)(ii).  *See State v. Marjama*, 14 Wn. App. 2d 803, 807-08, 473 P.3d 1246 (2020).  At trial, it was undisputed that three children were present during the assault – Kristina, ARC, and Ferrer all testified to that fact.  And the State's closing argument highlighted the fact that three children were present when it was discussing the aggravated domestic violence offense jury instruction.  Therefore, the jury's finding of an aggravated domestic violence offense necessarily was based on the presence of three minor children.  The trial court did not engage in additional fact finding in acknowledging that fact.

Next, the trial court at sentencing recounted portions of ARC's, Kristina's, and Ferrer's testimony that described what happened during the assault and stated that such testimony and the

17

jury's finding of the aggravated domestic violence offense were substantial and compelling reasons to impose an exceptional sentence upward, which were reflected in the court's written findings of fact. The court's written findings stated "that an exceptional sentence is supported by the testimony of [Kristina and ARC] and further, that the jury found both offenses to be aggravated domestic violence offenses pursuant to RCW 9.94A.535(3)(h)(ii)." CP at 235.

Ferrer argues that the trial court's oral ruling and written finding should be construed as extraneous factors that the court relied on to impose an exceptional sentence. However, the court's comments appear to be a reiteration of facts that the jury apparently relied on when it unanimously found that Ferrer's second degree assault was an aggravated domestic violence offense. The court merely articulated the basis for why the jury's factual determination of an aggravating domestic violence offense was a substantial and compelling reason for imposing an exceptional sentence.

We reject Ferrer's argument that the trial court engaged in prohibited fact finding and hold that the trial court merely articulated its basis for why the jury's factual determination of an aggravating domestic violence offense was a substantial and compelling reason for imposing an exceptional sentence.

4.     Ineffective Assistance of Trial Counsel

Ferrer argues that his defense counsel was ineffective for failing to raise a constitutional challenge to the exceptional sentence process.[9] This argument is incorrect.

To succeed on an ineffective assistance claim, the defendant must show both that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced the

---

[9] Ferrer does not argue that defense counsel erred in failing to object towhat he characterizes as additional judicial fact finding.

defendant. *State v. Estes*, 188 Wn.2d 450, 457-58, 395 P.3d 1045 (2017). A petitioner who presents a successful ineffective assistance of counsel claim necessarily establishes actual and substantial prejudice for purposes of collateral relief. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012).

As discussed above, we hold that the actual sentencing scheme for exceptional sentences is not unconstitutional. As a result, Ferrer cannot show that defense counsel was deficient in not challenging the sentencing scheme or that the result would have been any different if defense counsel had asserted the same grounds raised here. Therefore, we reject Ferrer's argument.

## CONCLUSION

We deny Ferrer's PRP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

LEE, C.J.

PRICE, J.